[Crim. No. 7949.   Second Dist., Div. Two.   Feb. 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID P. SHEPHERD, Defendant and Appellant.

David P. Shepherd, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant has appealed from a judgment of conviction for offering to sell marijuana.

Defendant was indicted for a violation of section 11531, Health and Safety Code, charging that on December 22, 1960, he did "willfully, unlawfully and feloniously sell, furnish and give away a narcotic, to wit, marijuana." The indictment was later amended by interlineation by the addition of the words "offer to" inserted before the word "sell" so that the charge as amended read that he "willfully, unlawfully and feloniously offered to sell, furnish and give away a narcotic, to wit, marijuana." It was also amended to add a prior conviction charging that defendant had previously been convicted of the crime of rape, a felony, in the State of Michigan and that he had served a term of imprisonment therefor in the state prison. Defendant's motion under section 995 of the Penal Code to set aside the indictment on the ground that the amendment by interlineation stated a different offense from that found by the grand jury was denied. Defendant entered a plea of not guilty and denied the prior conviction. Upon a trial, the jury was unable to agree on a verdict and a mistrial was accordingly declared.

On June 29, 1961, defendant was rearraigned on the amended indictment, again plead not guilty and also denied the prior conviction. Out of the presence of the jury, defendant waived rereading of the amended indictment and admitted the prior conviction. He was found guilty by a jury as charged. His motion for new trial was denied, as was

probation, whereupon defendant was sentenced to the state prison. He has appealed.

On December 22, 1960, James T. Johnson, a police officer of the City of Los Angeles, was working as an undercover narcotic agent. At approximately 2 p. m. on that date the officer was approached by ''Al'' while standing in front of Cooper's Doughnut Shop at 517 South Main Street. The officer had a conversation with ''Al'' who then walked over to defendant and had a conversation with him. The two then returned to the officer and the defendant asked him, ''What do you want?'' The officer replied, ''Can you get me half a can?'' Defendant replied, ''Let me go and make a phone call,'' and walked away. He returned shortly and stated, ''We will have to go over on 37th Place and Vermont. Stud [the supplier] only has cans and he don't want to break them down.''

The officer and the two men then drove in the officer's car to 37th Place and Vermont. When they arrived, the defendant told the officer and ''Al'' to wait in the car. He asked the officer to give him the money and said he would walk around the corner, get a can of ''weed'' and bring it back. Officer Johnson inquired why he couldn't go with him. Defendant replied, ''Stud gets leery. He doesn't want me to bring anyone with me.'' Defendant told Officer Johnson to pick him up as soon as he saw him walk back to the corner because he didn't want to be seen with narcotics on him. The officer then handed three five-dollar bills to defendant who got out of the car and walked around the corner. The officer and ''Al'' waited approximately 30 minutes in the car. They drove to the corner but the officer did not see defendant come back. Shortly thereafter the officer left.

During the month of January, 1961, Officer Johnson observed defendant four or five times. The second time, a week or 10 days after the transaction of December 22, the defendant walked over to Officer Johnson who inquired of him, ''What happened to my money? Why didn't you bring my money back or the narcotics?'' Defendant indicated that he had been picked up by the police and had to spend the money to get out on bail. He then said, ''I will get your narcotics for you.'' The officer asked him where he lived and defendant gave him a street address. The officer expressed doubt as to the correctness of the address, whereupon defendant produced his driver's license. It was at this time he learned defendant's

name. This enabled the officer also to get defendant's picture by reason of his previous conviction.

Defendant denied that he had ever seen Officer Johnson prior to some time in January of 1961. He also denied that he had been at 37th Place and Vermont with the officer or anyone else. His story of meeting Officer Johnson in January 1961 and what there transpired differed substantially from the officer's account. He said that Johnson walked up behind him, grabbed his shoulder and asked, "Where is my stuff?" Defendant said he did not know the officer and asked him who he was and also said to him, "You don't know me." It seems the officer had addressed him by some name other than his correct name. In order to support his claim that the officer did not know him, defendant produced his driver's license. Defendant denied that he ever furnished narcotics to the officer or to anyone else.

Defendant's first contention is that the evidence was insufficient to establish (1) that the crime charged in the amended indictment was committed, and (2) that it was committed by him.

The elements of the crime of offering to sell a narcotic are stated in *People* v. *Blake,* 179 Cal.App.2d 246 [3 Cal.Rptr. 749]. ▮ In that case the court approved (pp. 253-254) the following instruction to the jury: "The crime of offering to sell a narcotic consists of two elements, namely, a specific intent to make an offer to sell a narcotic, and a direct act done toward the making of the offer. In determining such an act was done, it is necessary to distinguish between mere preparation on the one hand, and the actual commencement of the doing of the criminal deed on the other. ▮▮ Mere preparation which may consist of planning the offense or of devising, obtaining, or arranging the means for its commission is not sufficient to constitute this crime; but the act of offering to sell a narcotic would constitute a crime where it clearly indicates a certain unambiguous intent to make an offer to sell a narcotic, and in itself is an immediate step in the present execution of the criminal design."

In the *Blake* case, *supra,* the defendant agreed to obtain a quantity of marijuana for a specified sum. The sale was arranged by the defendant over the telephone with an unidentified person. Defendant was to place the narcotic in the undercover agent's car and later receive the money. The transaction was never completed because of the discovery of the presence of the police. The court sustained defendant's

conviction of offering to sell a narcotic. The principles enunciated in the *Blake* case are applicable here. ■ The requisite element of intent could reasonably have been inferred by the jury from this testimony of the officer: that following the officer's inquiry as to whether defendant could provide him with "half a can," defendant stated he would have to make a telephone call, left and returned shortly. He directed the officer to drive to another part of the city where he indicated he would be able to get the required quantity of narcotics from a supplier whom he referred to as "Stud." Upon arriving at the designated point, defendant asked the officer for the money, accepted it, left the car stating that he would go around the corner, procure the marijuana and bring it back. This testimony, which the jury accepted as true since it is implicit in their verdict, clearly indicated an intent to make an offer to sell the contraband.

Furthermore, the facts we have summarized constitute "direct act[s] done toward the making of the offer" (*People v. Blake, supra*, p. 253), and go far beyond any mere preparation; they are "immediate step[s] in the present execution of the criminal design" (*People v. Blake, supra*, p. 254).

■■ It is also pointed out in the *Blake* case, *supra*, that the offer "need not go to the extent of an actual tender or presentation or showing of the narcotics. . . ." It is thus clear that the evidence is ample to establish that the offense was committed.

■ Defendant contends that he is not the person to whom Officer Johnson gave the money and from whom he sought to purchase marijuana. In effect he is arguing that the evidence was insufficient to establish the defendant as the perpetrator of the offense charged. The officer's testimony was that it was the defendant with whom he had this transaction. He was with the defendant for quite some time and had full opportunity to fix the defendant's features, voice and physical build in his mind. Prior to trial he saw the defendant several times. From this evidence the jury was amply justified in concluding that the identity of the defendant had been established. (*People v. Baserto*, 162 Cal.App.2d 123 [327 P.2d 558].) Implicit in the jury's verdict is the fact that the testimony of the officer was believed. The uncorroborated testimony of the officer is sufficient to sustain the implied finding as to defendant's identity. (Code Civ. Proc., § 1844; *People v. McCrasky*, 149 Cal.App.2d 630, 635 [309 P.2d 115]; *People v. Smith*, 174 Cal.App.2d 129, 134 [344 P.2d 435].)

Defendant also contends that his guilt was not established beyond a reasonable doubt. This contention is answered in *People* v. *Casado,* 181 Cal.App.2d 4 [4 Cal.Rptr. 851]. At page 8 the court stated: "It is the trier of fact who must be persuaded beyond a reasonable doubt of the guilt of the defendant. The function of the reviewing court is to determine whether the evidence, if believed, is of sufficient character to justify conviction. [Citation.]"

Defendant in effect contends that it was prejudicial error to amend the indictment on the theory that the amendment changed the offense for which he was indicted. The People, however, point out that section 1009, Penal Code, provides that the district attorney may amend an indictment at any time before the defendant pleads and that the court may order or permit an amendment of an indictment "for any defect or insufficiency. . . ." It further provides, however, that "An indictment . . . cannot be amended so as to change the offense charged. . . ." As previously noted the words "offer to" were added by interlineation so that the amended indictment charged that the defendant did "offer to sell, furnish and give away a narcotic, to wit, marijuana." Thereafter the defendant entered his plea.

It is the People's contention that the amendment was authorized by the above code section, that it did not change the offense charged, and that it did not prejudice the defendant. We believe the People's position is correct.

In *People* v. *Huerta,* 148 Cal.App.2d 272 [306 P.2d 505], an indictment for violation of section 11500, Health and Safety Code, as it then read, was amended during the course of trial by striking the narcotic therein described, which was marijuana, and substituting the words "a preparation of heroin." In sustaining the right to make this amendment the court stated (p. 275): "Where the amendment does not change the nature of the offense charged or prejudice the appellant's substantial rights, it is permitted. [Citation.]"

In *People* v. *O'Moore,* 83 Cal.App.2d 586 [189 P.2d 554], the indictment was amended to set forth more particularly the violation of statute which was therein alleged. In sustaining the right of the trial court to permit the amendment, the court stated: "The amendments authorized by section 1008 of the Penal Code[1] are not confined to mere matters of form, as distinguished from matters of substance." That

---

[1]Now essentially Penal Code section 1009.

section authorized amendments "for *any defect or insufficiency*,"[2] provided of course the amendment does not change the offense charged and the "substantial rights of the defendant" are not thereby prejudiced.

The amendment to the indictment in the instant case is the same kind as those discussed in the above cited cases. The original indictment alleged a public offense, a violation of section 11531, Health and Safety Code, in accordance with the statute. Both sales and offers to sell are prohibited by that section. Since an offense (the violation of Health & Saf. Code, § 11531) was alleged in the original indictment, under Penal Code section 1009 the indictment could properly be amended to state more clearly and more particularly the offense. (*Leonard* v. *Superior Court*, 4 Cal.2d 215, 218 [48 P.2d 687].)

The nature of the offense charged has not been changed. The original indictment alleged that the defendant did sell, furnish and give away marijuana in violation of section 11531, Health and Safety Code. The term "sale" as used in that section (and throughout Health & Saf. Code, div. 10) includes an offer to sell or give away. (Health & Saf. Code, § 11008.[3]) Therefore, since the definition of the term "sell" in the Health and Safety Code includes an offer to sell, the amendment did not change the offense charged by the grand jury.

It is therefore clear that the amendment was permissible under the authority of section 1009, Penal Code; that it did not change the offense charged in the indictment; and that defendant's substantial rights were in no way prejudiced thereby.

In this connection defendant also argues, based upon his theory that the amendment changed the offense which was initially charged in the indictment, that he was denied due process and equal protection of law. Since the premise upon which he bases this argument is lacking in merit, it follows that his argument and conclusion must also fail.

Defendant makes the unmeritorious contention in substance that the clerk did not read the indictment to the jury; that he did not waive the reading of the indictment; and that the clerk's minute entry showing a waiver is erroneous. In support of this contention defendant says he relies upon the

---

[2]Italics by the court.

[3]This section reads: " 'Sale,' as used in this division, includes barter, exchange, or gift, or offer thereof, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee."

"records" (presumably the reporter's transcript). ▉ Section 1093, subdivision 1 of the Penal Code provides that in felony cases the clerk must read the accusatory pleading to the jury but this reading could be waived by the defendant. (See *People* v. *Shack*, 55 Cal.App.2d 16, 19 [130 P.2d 197].) Defendant waived the reading of the indictment. In support thereof we quote from the reporter's transcript[4] the following: "The Court: . . . First of all, you waive the reading of the indictment against you?

"The Defendant: Yes, sir."

Defendant's contention that it was error to impeach him by showing that he had suffered a prior felony conviction, particularly after he had admitted such prior conviction, is entirely lacking in merit. On the witness stand defendant was asked the question: "You have been convicted of a felony?" He answered in the affirmative. The question was clearly proper and the answer called for was admissible. Having taken the stand the defendant was subject to impeachment by the asking of this question. (Code Civ. Proc., §§ 2051, 2065; *People* v. *Renteria*, 181 Cal.App.2d 214, 218 [5 Cal.Rptr. 119].) ▉ The circumstance that a defendant has admitted the charge of a prior felony conviction does not preclude his impeachment as a witness by proof of said conviction. (*People* v. *Peete*, 28 Cal.2d 306, 319-320 [169 P.2d 924].)

Finally, defendant contends that the grand jury was prejudiced and that the indictment was based upon hearsay contrary to the provisions of section 939.6 of the Penal Code. ▉ On the question of asserted bias it has been held that bias of a grand juror is not a ground for setting aside an indictment. (*People* v. *Kempley*, 205 Cal. 441, 447-448 [271 P. 478].) Furthermore, there is absolutely no showing of bias on the part of the grand jury or any member thereof.

▉ There is likewise no merit in defendant's contention that the indictment was based upon hearsay. While a transcript of the grand jury proceedings is not part of the record on appeal, there are references in the trial transcript to the fact that Officer Johnson, the People's witness, testified before the grand jury in connection with this indictment. From an examination of his testimony at the trial it may be reasonably inferred that Officer Johnson's testimony before the grand jury was not hearsay nor otherwise incompetent. Actually an excerpt from the grand jury testimony covering Officer Johnson's version of what defendant stated upon leaving the

---

[4]Page 4, lines 22 to 24.

officer's car at 37th Place and Vermont to get the contraband, was read into the record. It was neither hearsay nor otherwise incompetent. Even if it be assumed that some incompetent evidence was received, the indictment should not be set aside. (*People* v. *Nathanson*, 134 Cal.App.2d 43, 45 [284 P.2d 975].)

We find no merit whatever in this appeal. The record clearly indicates that defendant had a fair trial.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.