[Crim. No. 7267.   In Bank.   Apr. 30, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM JACKSON, Defendant and Appellant.

Donald B. McCaw, under appointment by the Supreme Court, and McCaw & Barnum for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

TRAYNOR, J.—Defendant was convicted by a jury of offering to sell narcotics in violation of section 11501 of the Health and Safety Code. Defendant appeals from the judgment of conviction and from the order denying his motion for a new trial.[1]

The evidence shows that defendant offered to sell heroin to Officer Lawrence, an undercover narcotics agent, that Officer Lawrence gave defendant $20, and that defendant did not deliver heroin or anything else.

Defendant contends that section 11501 does not encompass an offer to sell a narcotic when nothing is delivered. It is settled, however, that delivery is not an essential element of the offense of offering to sell a narcotic. (*People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072]; *People* v. *Shepherd,* 200 Cal.App.2d 306, 311 [19 Cal.Rptr. 234]; *People* v. *Blake,* 179 Cal.App.2d 246, 253-254 [3 Cal. Rptr. 749].)

Defendant also contends that the trial court erred in giving the following instruction on specific intent: "The crime of offering to sell a narcotic consists of two elements, namely: the specific intent to make an offer to sell a narcotic and a direct act done toward the making or expression of the offer to another. . . . [T]he act of offering to sell a narcotic would constitute a crime where it clearly indicates a certain intent to make an offer to sell the narcotic and in itself is an immediate step in the present execution of the criminal design. It is not an element of the offense with which the defendant is charged and therefore it is not necessary for the prosecution to prove that the defendants ever intended to perform the offered act. It is no defense to the crime charged herein that there exist in the mind of the person who makes an offer to sell heroin an unexpressed intention never to perform the offered act."

This instruction is erroneous. It states that the only intent required is the intent to make an offer and that an intent to make a sale is not necessary. In *People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072], we held that "a

[1]Notice of appeal was filed before the effective date of the legislation making such an order nonappealable. (Stats. 1961, ch. 850, § 5.)

specific intent to sell a narcotic is an essential element of the crime of offering to make such a sale under section 11501.'' ▮ Persons who offer to sell narcotics with no intention of performing are not engaged in narcotics traffic. Their behavior is not materially different from that of other ''bunco'' offenders and is not subject to the severe penalties imposed by section 11501. (Compare Pen. Code, §§ 532, 490.) ▮ *People* v. *Shepherd*, 200 Cal.App.2d 306 [19 Cal.Rptr. 234], and *People* v. *Blake*, 179 Cal.App.2d 246 [3 Cal.Rptr. 749], are disapproved insofar as they approve instructions inconsistent with this opinion.

The only evidence at the trial was the testimony of Officer Lawrence. He testified that defendant took the $20 and left the bar where they had met, ostensibly to go across the street and ''get the stuff.'' Defendant returned in 10 minutes and said that he had made contact. He left again, and when he had not returned after an hour, Officer Lawrence set out to find him. When he found defendant across the street from the bar, defendant said he did not know Officer Lawrence and walked away. When Officer Lawrence followed and attempted to talk to him, defendant cursed the officer, went into a restaurant and emerged a few minutes later brandishing a 14-inch butcher knife. Defendant then walked away, and Officer Lawrence did not attempt to follow him. The jury could reasonably conclude from this evidence that defendant's offer to sell narcotics was made without the intent to perform. The error in the instruction was therefore prejudicial.

The judgment and the order denying motion for new trial are reversed.

Gibson, C. J., Peters, J., Tobriner, J., and Peek, J., concurred.

SCHAUER, J., Dissenting.—The majority concede that ''The evidence shows that defendant offered to sell heroin to Officer Lawrence'' and that ''delivery is not an essential element of the offense of offering to sell a narcotic.'' Nevertheless, the majority reverse the judgment on the ground that it was error to give the following instruction: ''The crime of offering to sell a narcotic consists of two elements, namely; the specific intent to make an offer to sell a narcotic and a direct act done toward the making or expression of the offer to another. . . . [T]he act of offering to sell a nar-

cotic would constitute a crime where it clearly indicates a certain intent to make an offer to sell the narcotic and in itself is an immediate step in the present execution of the criminal design. It is not an element of the offense with which the defendant is charged and therefore it is not necessary for the prosecution to prove that the defendants ever intended to perform the offered act. It is no defense to the crime charged herein that there exist in the mind of the person who makes an offer to sell heroin an unexpressed intention never to perform the offered act.''

The substance of the quoted instruction, so far as I am informed, had not been questioned by an appellate court or doubted by a trial judge (since ''offering'' was made a crime in 1909) until the dictum by a majority of this court (in affirming the judgment of conviction) in *People* v. *Brown* (1960) 55 Cal.2d 64, 66-68 [9 Cal.Rptr. 816, 357 P.2d 1072].[1] As appears in the margin the *Brown* majority referred to a report of a legislative subcommittee (made in 1953) stating the view that as to an ''individual who agrees to sell, furnish . . . any narcotic, and then delivers some other . . . material . . . nothing can be done to that person, except to charge [him] with 'bunco.' '' It will be remembered that the forerunner of the statute (Health & Saf. Code, § 11501) allegedly violated by Brown and by the defendant at bench

---

[1] The pertinent majority dictum in *Brown* (pp. 67-68) is as follows: ''Both defendant's and his counsel's contentions are consistent with the position taken by the Subcommittee on Narcotics of the Assembly Interim Committee of the Judiciary in 1953 when it proposed the adoption of two new sections of the Health and Safety Code, only one of which was enacted. Section 11503 makes it a crime to offer to sell a narcotic and then deliver a substitute.[2] Proposed section 11509 (§ 10 of Assembly Bill No. 2243, 1953 Session) would have made it a crime to offer to sell a narcotic coupled with the acceptance of money, even though there was no delivery of anything.[3]

''In recommending the passage of section 11503, the subcommittee stated: '[This section] will be entirely new law. This will cover the individual who agrees to sell, furnish, transport, or give away any narcotic, and then delivers some other liquid, substance, or material. These individuals are known to be in a position to violate the law; but, for some reason, they may feel that they are dealing with a law enforcement officer and thus deliver tobacco, water, or some other substance with the result that they have had the intent to commit the crime but are testing out the officer. At the present time nothing can be done to that person, except to charge [him] with ''bunco.'' . . .'

''We agree with defendant's contention that a *specific intent to sell* a narcotic is an essential element of the crime of *offering* to make such a sale . . . .'' (Italics added.)

(Footnotes 2 and 3 quoting from sections 11503 and 11509 of the Health and Safety Code have been deleted as unnecessary here.)

was enacted in 1909 (Stats. 1909, ch. 279, § 4). As I pointed out in my limited concurring opinion in *Brown* (p. 75 of 55 Cal.2d), and as bears emphasis now, it does not appear that the 1953 opinion of a legislative subcommittee should be considered as informative or persuasive as to the intent of the Legislature in 1909 when it amended the Poison Act to make it unlawful "to . . . offer to sell, furnish or give away" narcotics except under certain conditions.

The language used by the Legislature is inclusive of the act and intent defined by the instruction which was given in the case at bench; there is nothing in the language of the statute which requires the State to not only prove that the defendant offered to sell a narcotic but (as the majority now require) to go farther and prove that the defendant—beyond all reasonable doubt—was an honest and ethical dealer in contraband narcotics who dutifully intended to deliver full measure of standard quality.

As was said by the District Court of Appeal in *People* v. *Blake* (1960) 179 Cal.App.2d 246, 251 [3 Cal.Rptr. 749], "The statute indicates that the possession or sale of a narcotic is a separate and distinct offense from an offer to sell or furnish narcotics. It is equally clear from the above that the Legislature intended to place its condemnation upon each distinct, separate part of every transaction coming within the mischiefs intended to be reached and remedied. (Cf. *Burton* v. *United States,* 202 U.S. 344, 377 [26 S.Ct. 688, 50 L.Ed. 1057].) '. . . Anything which gives sustenance, solace, comfort or encouragement in the selling of narcotics or in the agreeing to sell narcotics, can be condemned, and properly so, by the Legislature . . .' (*People* v. *Shepard,* 169 Cal.App.2d 283, 288 [337 P.2d 214].)

"Appellant's argument is that section 11500 of the Health and Safety Code insofar as it relates to the crime of unlawfully offering to sell narcotics is unconstitutional because the statute is void for vagueness. As pointed out in *Lorenson* v. *Superior Court,* 35 Cal.2d 49, 60 [216 P.2d 859], in order for a statute to comply with constitutional requirements, '. . . ". . . it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited." (*People* v. *Smith,* 36 Cal.App.2d Supp. 748, 752 [92 P.2d 1039].) . . .

" '. . . Where a statute contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combatted in language giving fair notice of the practices to

be avoided, a court will be slow to say that such a statute is too indefinite to be enforced. The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meanings of words.' '' (See also *Benson* v. *Superior Court* (1962) 57 Cal. 2d 240, 243 [4,5] [18 Cal.Rptr. 516, 368 P.2d 116].) It scarcely needs to be mentioned that as to the law of contracts the validity of an offer to sell an article—or an acceptance of that offer—is not at all affected by the fact that the offeror may not then have possession of, or own, or know where he may procure, the subject of the offer. (See 46 Am.Jur., § 21, p. 216, and cases cited.)

The opinion of the majority would be more quickly comprehensible if it simply stated that the word ''offers'' is surplusage and is to be deemed stricken from Health and Safety Code section 11501. It cannot be successfully denied that such is the effect of today's holding. This must be so because under that holding unless the offeror goes further than to make an offer; i.e., unless he actually delivers the goods or is apprehended in the act of delivery, his honesty and good faith can scarcely be proven beyond all reasonable doubt. But if he delivers the goods, or is apprehended in the act of delivery, he will obviously be liable to prosecution as one ''who transports . . . sells, furnishes, administers or gives away'' the narcotic. The majority, therefore, must be understood to hold that the Legislature intended the word ''offers'' to be mere surplusage and not to define an independent act for which the offeror may be convicted.

Speaking of another statute—Penal Code section 653f, in which the legislative intention appears no more clearly than in section 11501—Mr. Justice Traynor for a unanimous court said (*Benson* v. *Superior Court* (1962), *supra*, 57 Cal.2d 240, 243 [4]): ''That section is designed not only to prevent solicitations from resulting in the commission of the crimes solicited, but to protect 'inhabitants of this state from being exposed to inducement to commit or join in the commission of the crimes specified. . . .' (*People* v. *Burt*, 45 Cal.2d 311, 314 [288 P.2d 503, 51 A.L.R.2d 948].) 'Purposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition towards criminal activity to call for liability. Moreover, the fortuity that the

person solicited does not agree to commit the incited crime plainly should not relieve the solicitor of liability. . . .' (Model Penal Code, § 5.02, comment [Tent. Draft No. 10, 1960] 82.) . . . Solicitation itself is the evil prohibited by the Legislature, and prosecution therefor is particularly appropriate for the very case in which the crime solicited does not take place." Here we may paraphrase: "Offering itself [to sell or furnish or transport or administer a narcotic] is the evil prohibited by the Legislature, and prosecution therefore is particularly appropriate for the very case in which the crime solicited [the completed purchase or other acceptance of the narcotic] does not take place." Manifestly, one who offers to sell, furnish, transport for or administer a narcotic to another, is soliciting such other to purchase, accept or use the narcotic.

In my view the instruction as given was correct and the judgment should be affirmed.

McComb, J., concurred.