[Crim. No. 15444. In Bank. May 28, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
HOLLIS LEE NEWMAN, Defendant and Appellant.

## COUNSEL

Michael J. Mandel, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Robert R. Granucci and John F. Henning, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BURKE, J.—Following trial by jury, defendant was convicted of possessing a restricted dangerous drug for the purpose of sale, as proscribed by Health and Safety Code section 11911.[1] On appeal, defendant urges reversal on the grounds that there was no substantial evidence to support the verdict, that an instruction on specific intent should have been given, and that he was denied effective assistance of counsel. We have concluded that defendant's conviction must be reversed for failure to instruct the jury with regard to the intent necessary to constitute a violation of section 11911.

In the early morning of April 11, 1969, Officers Olmstead and DeVaney stopped defendant for speeding. Defendant exited from his car and walked back to meet the officers. Upon request, defendant produced his driver's license and returned to his car to secure the vehicle registration. DeVaney followed defendant to the car and there detected the odor of what he thought was burnt marijuana. Olmstead confirmed the suspicion and, accordingly, defendant and two female co-occupants were placed under arrest.

While standing adjacent to the vehicle, Olmsted shined his flashlight inside. On the left rear floorboard he observed what appeared to be a marijuana seed. Defendant was taken to the police car, where he was searched for weapons; Olmstead sat in the driver's seat of defendant's car. While so seated, he noticed a sealed envelope placed on the tape deck below the dashboard. He observed a bulge in the envelope and, curious as to its contents, Olmstead withdrew the envelope and felt it. He then opened the envelope and found eight plastic bags containing a white powder which subsequent laboratory tests revealed to be methedrine, a restricted dangerous drug.

A toxicologist testified that the eight plastic bags contained 4.5 grams (4,500 milligrams) of methedrine. He testified, further, that the substance is usually dispensed in 5 to 10 milligram quantities and that the quantity of methedrine contained in the eight plastic bags was sufficent to produce 450 capsules.

One of the arresting officers testified that each of the plastic bags was commonly referred to as a "bindle" and could be sold for $10 "on the street." Another officer experienced with narcotics testified that his analysis had indicated that, prior to testing, these eight bindles contained 5.1 grams

---

[1]Section 11911, in pertinent part, provides that ". . . every person who possesses for sale any restricted dangerous drug shall be punished by imprisonment in the state prison. . . ."

of a substance which proved to be an amphetamine. He confirmed the going price of $10 per bindle, and testified that each bindle should provide four injections of methedrine, so the total would be about 32 injections, and that ordinarily one injection is all that one person would take in a day. He further testified that of 200 cases processed by the Napa County sheriffs' office in the past year, most cases involved only one bindle, and none exceeded two or possibly three bindles. He concluded on the basis of his experience, training and judgment that the bindles "were in possession for sale," because of the quantity found in a single container. Defendant chose not to cross-examine the officer, whose testimony remained unrebutted.

Testifying in his own behalf, defendant denied any knowledge regarding the presence of the envelope or its contents, and stated he was driving a borrowed car. During direct examination, defendant admitted that he had seen other plastic bags similar to the ones found by Olmstead and that he knew they contained "some kind of drug." On cross-examination he testified that in the past he had been in the presence of persons who used or injected drugs and that he was familiar with the smell of marijuana.

Turning to defendant's contentions, it is apparent that there was substantial evidence to support defendant's conviction under section 11911 of the Health and Safety Code. ■ A violation of that section is established by proof that the accused possessed a restricted dangerous drug for the purpose of selling it. (*People* v. *Hunt,* 4 Cal.3d 231, 236 [93 Cal.Rptr. 197, 481 P.2d 205]; *People* v. *Allen,* 254 Cal.App.2d 597, 600-601 [62 Cal. Rptr. 235].) ■ In determining the sufficiency of evidence under section 11911, precedents relating to possession for sale of narcotics are relevant. (*Id.*) ■ The elements of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence and narcotic character of the drug. (*People* v. *White,* 71 Cal.2d 80, 82 [75 Cal.Rptr. 208, 450 P.2d 600]; *People* v. *Francis,* 71 Cal.2d 66, 73 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Groom,* 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Gorg,* 45 Cal.2d 776, 780 [291 P.2d 469].) ■■ Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. (*People* v. *Francis, supra,* at p. 71.) ■ The elements of unlawful possession may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (*People* v. *White, supra,* at p. 83; *People* v. *Groom, supra,* at p. 697.)

■ In the instant case, sufficient circumstantial evidence existed from which the jury could infer that defendant possessed the drugs and had knowledge of their presence, for the envelope containing the drugs was located and visible on the tape deck below the dashboard of the car defendant was driving and was therefore immediately accessible to him and subject to his exclusive or joint dominion and control. (See *People* v. *Francis, supra,* 71 Cal.2d 66, 71.)

■ Given the fact that defendant possessed and was aware of the presence of the drugs, defendant's knowledge of their character was sufficiently established through his own testimony that he had seen similar packages and knew that they contained some kind of drug, and that he had seen drug users inject themselves with dangerous drugs and narcotics.

With respect to defendant's purpose or intent to possess the drugs for sale, the officer gave his opinion, based upon his experience, training and judgment, that the bindles "were in possession for sale" because of the large quantity of drugs contained in the envelope. ■ In cases involving possession of marijuana or heroin, experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld. (E.g., *People* v. *Martin,* 247 Cal.App.2d 416, 420-421 [55 Cal.Rptr. 629]; *People* v. *Aguilar,* 232 Cal.App.2d 173, 178 [42 Cal.Rptr. 666].) ■ However, as to drugs which may be purchased by prescription, an officer's opinion that possession of lawfully prescribed drugs is for purposes of sale is worthy of little or no weight in the absence of evidence of some circumstances not to be expected in connection with a patient lawfully using the drugs as medicine. (*People* v. *Hunt, supra,* 4 Cal.3d 231, 237-238.)

In the instant case, there was no evidence that the drugs were in fact lawfully purchased by prescription. Moreover, their quantity and packaging, together with their presence in an automobile, constitutes ample evidence of circumstances negating a lawful use as medicine. Thus, there existed sufficient evidence to sustain defendant's conviction for possession of dangerous drugs for sale.

■ Defendant contends that the court failed to instruct the jury regarding the element of intent to sell. It was the obligation of the trial court to instruct the jury regarding the "general principles of law governing the case," that is, "those principles of law commonly or closely and openly connected with the facts of the case before the court." (*People* v. *Hood,* 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370].) The court did instruct

the jury with respect to the *general* intent necessary to commit a crime, and also informed them that they could find defendant guilty of either possession or possession for sale, and that to constitute such crimes "the acts of dominion and control must be accompanied by knowledge on the part of the accused of (1) the presence of the drug, and (2) of its nature as a restricted dangerous drug." However, the court never explained to the jury the differences between the offenses of possession and possession for sale, a matter which was certainly "closely and openly connected with the facts of the case," involving essential elements of the crimes with which defendant was charged.

█ As we have seen, section 11911 requires proof that defendant possessed dangerous drugs for the purpose of selling them. (*People* v. *Hunt, supra,* 4 Cal.3d 231, 236.) As such, it seems apparent that the offense is a "specific intent" crime akin to the crimes of selling or offering to sell a narcotic (see *People* v. *Jackson,* 59 Cal.2d 468, 469 [30 Cal.Rptr. 329, 381 P.2d 1]; *People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P. 2d 1072]; *People* v. *Monteverde,* 236 Cal.App.2d 630, 637 [46 Cal.Rptr. 206]), or furnishing a narcotic (see *People* v. *Holquin,* 229 Cal.App.2d 398, 402-403 [40 Cal.Rptr. 364]). █ █ Where specific intent is a requisite element of an offense, an instruction on specific intent should be given by the court on its own motion (*People* v. *Ford,* 60 Cal.2d 772, 793 [36 Cal. Rptr. 620, 388 P.2d 892]; *People* v. *Longino,* 222 Cal.App.2d 734, 738 [35 Cal.Rptr. 367]), and, where a specific intent crime is charged, it is error to instruct only on general intent without explanation or qualification (*People* v. *Zerillo,* 36 Cal.2d 222, 231-232 [223 P.2d 223]; *People* v. *Hill,* 67 Cal.2d 105, 118 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Holquin, supra,* at p. 403).

The People contend that any error in instructing the jury regarding specific intent was not prejudicial and did not result in a miscarriage of justice within the meaning of article VI, section 13 of our state Constitution. Accordingly, we must attempt to determine whether or not it is reasonably probable that a result more favorable to defendant would have been reached in the absence of error. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].) As indicated above, there was no direct evidence that defendant possessed the drugs with the purpose or intent to sell them. In fact, even the evidence that he possessed the drugs was wholly circumstantial. At trial, the arresting officer testified that in his judgment, based *solely* upon the quantity of drugs discovered, the drugs "were in possession for sale." Without the benefit of clarifying instructions, the jury might well have assumed that the sole distinguishing feature between the offenses of possession and possession for sale was the *quantity* of drugs possessed by the accused rather than his

underlying *intent*. The jury could have concluded that the offense of "possession for sale" is committed by anyone who possesses dangerous drugs in a quantity beyond that required for immediate personal use. The likelihood of confusion was enhanced by the court's instruction on "general intent," which emphasized the significance of one's illegal conduct rather than one's intent to violate the law, and also by its instruction defining the elements of the offenses charged against defendant. The latter instruction, which purported to explain the elements necessary to "constitute" the offenses of possession and possession for sale, seemingly permitted the jury to find defendant guilty of possession for sale solely on the basis of his dominion and control over the drugs and his knowledge of their presence and character.

Although the question is a close one, we have concluded that had the jurors been properly instructed, it is reasonably probable that they would have found that defendant was in possession of the drugs but had no actual intent to sell them. Since defendant's further contention that he was denied effective counsel at trial raises substantial legal issues, we decline to accept the People's waiver of the right to retry defendant for possession for sale (see *People* v. *Heslen,* 27 Cal.2d 520 [165 P.2d 250]; *People* v. *Thomas,* 25 Cal.2d 880, 905 [156 P.2d 7]), and to exercise our statutory discretion to modify the judgment and reduce defendant's conviction to possession of a restricted dangerous drug. (See Pen. Code, §§ 1181, subd. 6, 1260; *People* v. *Odle,* 37 Cal.2d 52, 58 [230 P.2d 345].)

The judgment is reversed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.