[Crim. No. 18316. In Bank. July 30, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
DAVID LEROY DANIELS, Defendant and Respondent.

[L.A. No. 30392. In Bank. July 30, 1975.]

DAVID LEROY DANIELS, Petitioner, v.
THE SUPERIOR COURT OF SAN
BERNARDINO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

858

**COUNSEL**

Lowell E. Lathrop, District Attorney, and Joseph A. Burns, Deputy District Attorney, for Plaintiff and Appellant and for Real Party in Interest.

No appearance for Respondent.

Charles E. Ward, Public Defender, and Henry R. Kraft, Deputy Public Defender, for Defendant and Respondent and for Petitioner.

## Opinion

**RICHARDSON, J.**—We consider the question of whether sale of a restricted dangerous drug is a crime requiring a general or specific intent and conclude that it requires the former where, as here, there is a transfer of possession of such a drug to another for cash.

David Daniels was found guilty by a jury, as charged, of two counts of selling a restricted dangerous drug (Health & Saf. Code, former § 11912, now § 11352). The court granted a motion for a new trial on the ground urged by defendant that an instruction on specific rather than general intent should have been given, and the People, contending that the offense in question is a general intent crime, appeal from the order (Pen. Code, § 1238, subd. (3)). Defendant, in turn, petitions for mandamus or prohibition seeking to restrain the superior court from conducting "further proceedings, including [re]trial," because the destruction of evidence denied him due process.

### The Appeal

The facts of the case are relatively simple. On February 23, 1972, Raul Cervantes, an undercover police officer, picked up three hitchhikers, one of whom was defendant. The other two identified themselves as Keith and Robert. Keith asked Cervantes if he knew anyone who wanted to buy some "orange sunshine," a term Cervantes knew from experience referred to "LSD" [lysergic acid diethylamide]. Cervantes indicated he would buy five tablets at $2 each. Defendant then handed the tablets to Cervantes who, in turn, handed $10 to Keith. Cervantes said he would purchase more later, and he and defendant agreed to meet the next day. As prearranged, Cervantes and defendant met on February 24, 1972, and defendant handed Cervantes a jar containing tablets in exchange for $20. The tablets given to Cervantes by defendant on February 23 and 24, 1972, contained a lysergic acid derivative.

Defendant, testifying in his own behalf, stated that on February 23, it was Keith who handed the tablets to Cervantes in exchange for $10 and that on February 24 defendant had no contact with Cervantes.

We examine the nature of the requisite intent. The terms "specific" and "general" intent have been notoriously difficult to define and apply. (See *People* v. *Hood* (1969) 1 Cal.3d 444, 456 [82 Cal.Rptr. 618, 462 P.2d 370].) ■ While both terms have been employed in more than one sense, thereby causing confusion (see Hall, General Principles of Criminal Law (2d ed. 1960) pp. 142-145; Perkins on Criminal Law (1957) pp. 671-676), we have stressed an important temporal difference and have observed: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*Hood* at pp. 456-457.)

■ Bearing in mind the foregoing conceptual distinction, we consider the elements of the charged crime of sale of a restricted dangerous drug contained in former section 11912, Health and Safety Code. This section read: "[*E*]*very person who* transports, imports into this state, *sells,* manufactures, compounds, furnishes, administers, or gives away, or offers to transport, import into this state, sell, manufacture, compound, furnish, administer, or give away, or attempts to import into this state or transport *any restricted dangerous drug,* except upon the prescription of [designated persons] shall be punished by imprisonment in the state prison . . . ." (Italics added; Stats. 1970, ch. 1098, p. 1955.) The statutory definition of the offense focuses on the act of the sale itself to which the courts have added the element of knowledge of the character of the substance sold. (*People* v. *Innes* (1971) 16 Cal.App.3d 175, 178 [93 Cal.Rptr. 829]; cf. *People* v. *Newman* (1971) 5 Cal.3d 48, 52-53 [95 Cal.Rptr. 12, 484 P.2d 1356]; *People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146].)

It is apparent that the offense defined in former section 11912 does not expressly require an intent "to do a further act or achieve a future consequence" (*People* v. *Hood, supra,* 1 Cal.3d at p. 457). Further, it does not appear that such an intent is implicit in that section as a prerequisite to a conviction of that crime in cases where, as here, the alleged sale

consists of the simultaneous transfer of a restricted dangerous drug to another for cash. The term "sell" in common parlance means "to transfer to another for a price." (See Webster's New Internat. Dict. (2d ed.).) A person who transfers possession of a restricted dangerous drug to another for cash is engaged in traffic in such drugs and thus subject to the severe penalties provided by law. (See generally Health & Saf. Code, former § 11900.5 [purpose of division on restricted dangerous drugs includes, among other things, prevention of illegal distribution of such drugs].)

In the matter before us it is sufficient for a conviction that the defendant intentionally did that which the law declares to be a crime (Pen. Code, § 20; see *People* v. *Gory* (1946) 28 Cal.2d 450, 453 [170 P.2d 433]; *People* v. *Dillon* (1926) 199 Cal. 1, 7 [248 P. 230]; *People* v. *Brocklehurst* (1971) 14 Cal.App.3d 473, 476 [92 Cal.Rptr. 340]), i.e., that he intentionally sold (transferred to another for cash) a restricted dangerous drug with knowledge of its character. Proof that he intended to violate the law is not required. (See *People* v. *Winston* (1956) 46 Cal.2d 151, 158 [293 P.2d 40]; *People* v. *Gory, supra,* at pp. 453-454; *People* v. *Dillon, supra;* Fricke & Alarcon, Cal. Criminal Law (10th ed. 1970) p. 31.) No other intent is required. We conclude that selling a restricted dangerous drug (in the sense of transferring it to another for cash) is a general and not a specific intent crime.

Neither *People* v. *Jackson* (1963) 59 Cal.2d 468, 469-470 [30 Cal.Rptr. 329, 381 P.2d 1] nor *People* v. *Brown* (1960) 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072], both cited by defendant, is contrary to our conclusion herein. Both cases involved charges of *offers* to sell narcotics in contradistinction to the instant charge of *sale* of restricted dangerous drugs. In an offer to sell a narcotic, the proscribed act is the making of the offer. An accompanying intent to do a further act, i.e., to sell, is inherent, making the offense a specific intent crime.

The appellate court in *People* v. *Holquin* (1964) 229 Cal.App.2d 398, 402-403 [40 Cal.Rptr. 364], cited by defendant, considered the crime of *furnishing* a narcotic in violation of former section 11501 of the Health and Safety Code, which provided: " '. . . every person who . . . sells, furnishes, . . . or gives away, or offers to . . . sell, furnish, . . . or give away . . . any narcotic . . . shall be punished' " in a specified manner. *Holquin,* in concluding that furnishing a narcotic in violation of section 11501 was a specific intent crime, relied on our reasoning in *People* v. *Jackson, supra,* 59 Cal.2d 468, and *People* v. *Brown, supra,* 55 Cal.2d 64. The

*Holquin* court reasoned "that a specific intent to effect a change of possession of a narcotic upon a sale or offer to sell is an element of those crimes, applies with equal force to the crime of furnishing a narcotic." (*Holquin* at p. 402.) The reasoning, however, of *Brown* and *Jackson*, concerned solely with *offers* to sell a narcotic, did not establish that a specific intent (in the sense of an intent to perform a future act or to achieve a particular result) is an element of the crime of *sale* of a narcotic. Insofar as *Holquin* is inconsistent with the views expressed herein it is disapproved.

Defendant also relies upon language in *People* v. *Newman, supra,* 5 Cal.3d 48, involving a conviction for violation of Health and Safety Code section 11911, possession for purposes of sale of a restricted dangerous drug. We there stated: "[S]ection 11911 requires proof that defendant possessed dangerous drugs for the purpose of selling them. [Citation.] As such, it seems apparent that the offense is a 'specific intent' crime akin to the crimes of selling or offering to sell a narcotic (see *People* v. *Jackson,* 59 Cal.2d 468, 469 . . . *People* v. *Brown,* 55 Cal.2d 64, 68 . . . *People* v. *Monteverde,* 236 Cal.App.2d 630, 637 . . .) or furnishing a narcotic (see *People* v. *Holquin,* 229 Cal.App.2d 398, 402-403)." (*Newman* at p. 54.) *Monteverde,* like *Jackson* and *Brown,* however, dealt solely with offering to sell a narcotic. *Newman* involved possession of a restricted dangerous drug for sale, and the language therein indicating that selling a narcotic is a specific intent crime is, accordingly, dictum. That dictum is hereby disapproved.

In the case before us the instructions given correctly informed the jury of the necessary elements of the sale of a restricted dangerous drug. In accordance with the general intent instruction, CALJIC No. 3.30, the jury was told: "In the crime charged, . . . there must exist a union or joint operation of act or conduct and criminal intent. To constitute criminal intent it is not necessary that there should exist an intent to violate the law. Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent, even though he may not know that his act or conduct is unlawful." The jury was further instructed (CALJIC former No. 12.21 (1972 rev.)): "Every person who sells, furnishes, or gives away a restricted dangerous drug with knowledge that the substance is a restricted dangerous drug, is guilty of a crime. . . ."

Although defendant asserts that the giving of CALJIC No. 3.30 would in some manner have confused the jury if it had relied on an aiding and abetting theory, he fails to demonstrate that the instruction would have

such effect. Since the instructions were proper, we conclude that the court erred in granting the motion for a new trial.

## THE WRIT

After the motion for a new trial was granted, defendant, relying on *Brady* v. *Maryland* (1962) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], made a motion to suppress evidence of the tablets and jar in the event of retrial on the ground that there had been a wilful destruction of the physical evidence. The motion was denied, and defendant then filed the instant petition seeking review of that denial. Since we reverse the order granting a new trial, there will be no retrial, and the petition is thereby rendered moot. (See *Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 671 [56 Cal.Rptr. 265, 423 P.2d 193]; 5 Witkin, Cal. Procedure (2d ed. 1971) § 117, pp. 3893-3895.)

## CONCLUSION

The order granting a new trial is reversed. The alternative writ heretofore issued is discharged, and the petition for mandamus or prohibition is denied.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., and Clark, J., concurred.