**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Jason Ed SALEM, Defendant— Appellant.**

No. 05–50203.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 17, 2005.

Decided June 5, 2006.

Keri Curtis Axel, Office of the U.S. Attorney Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Davina Chen, Federal Public Defender's Office, Los Angeles, CA, for Defendant–Appellant.

Before: HUG, PREGERSON, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Jason Ed Salem appeals the district court's order revoking his supervised release and reimposing a twenty-four month prison sentence. The district court found that Salem violated the conditions of his supervised release by possessing burglary tools in violation of Cal.Penal Code § 466, methamphetamine in violation of Cal. Health & Safety Code § 11377(a), and a hypodermic needle and syringe in violation of Cal. Bus. & Prof.Code § 4140.

As a preliminary matter, 18 U.S.C. § 3583, the statute authorizing the revocation of supervised release, remains constitutional after *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *United States v. Huerta–Pimen-*

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

*tal,* 445 F.3d 1220, 1224–25 (9th Cir.2006). Thus, Salem's *Booker/Apprendi* challenge to the statute fails.

■ The district court clearly erred in finding that Salem possessed burglary tools in violation of Cal.Penal Code § 466, because Salem did not have these tools in his personal possession, as the statute requires. This error is immaterial, however, because the driving force behind Salem's new sentence was the district court's finding that he possessed methamphetamine, a hypodermic needle, and a syringe in violation of Cal. Health & Safety Code § 11377(a) and Cal. Bus. & Prof.Code § 4140.

■ The district court did not clearly err in finding that Salem constructively possessed the drug contraband. When asked by the officer whether the car was his, he responded by saying that he had permission to use it, and he had the keys to the car in his pocket. The theory offered by the dissent that Salem might simply have been retrieving clothes from the trunk for the car's owner is no more than a theory, since Salem presented no affirmative evidence in support of that or any other innocent explanation. It is an unlikely theory, since had it been the case, Salem would probably have responded to the question whether the car was his by saying, "No, but the owner asked me to get the clothes out of the trunk," rather than, "No, but I have permission to use it," which according to the evidence *is* what Salem actually said. Even Salem's counsel acknowledged that Salem had permission to "borrow the car," which plainly implies the ability to drive it. When the officer searched the car and flipped down the visor above the driver's seat, the contraband fell out. Anyone who drove the car might flip the visor down, so it also seems unlikely that someone other than Salem hid the contraband at that location, then gave Salem permission to use the car. Based on this evidence, the district court's finding that Salem exercised dominion and control over the contraband was not clearly erroneous. *See People v. Newman,* 5 Cal.3d 48, 52, 95 Cal.Rptr. 12, 484 P.2d 1356 (1971), *overruled on other grounds by People v. Daniels,* 14 Cal.3d 857, 122 Cal. Rptr. 872, 537 P.2d 1232 (1975), (holding that dominion and control of contraband may be "imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to ... the joint dominion and control of the accused and another").

Nor did the district court clearly err in inferring from the circumstances that Salem had knowledge of the presence and nature of the contraband. *See People v. Williams,* 5 Cal.3d 211, 95 Cal.Rptr. 530, 485 P.2d 1146, 1148 (1971). The contraband was located within areas of the car likely to have been accessed by Salem as a user of the car. Salem fled from an investigating police officer. One could "reasonably infer that his flight reflected consciousness of guilt." *See People v. Hutchinson,* 71 Cal.2d 342, 346, 78 Cal. Rptr. 196, 455 P.2d 132 (1969). Under a deferential standard of review, we cannot conclude that the district court clearly erred in finding, by a preponderance of the evidence, that Salem possessed the drug contraband. *See, e.g., United States v. Lomayaoma,* 86 F.3d 142, 146–47 (9th Cir.1996) (rejecting a sufficiency of the evidence challenge to the district court's inference that a supervised releasee violated a criminal statute with the requisite mens rea, even absent affirmative evidence).

AFFIRMED.

PREGERSON, concurring in part and dissenting in part.

I agree with the majority that Salem's *Booker/Apprendi* challenge fails. I dis-

agree with the majority, however, on whether the district court clearly erred in revoking Salem's supervised release based on possession of drugs and drug paraphernalia. I believe the evidence is insufficient to show that Salem had constructive possession of the methamphetamine and drug paraphernalia found under the driver's side sunvisor of a car not registered to Salem, where there was no clear evidence that Salem had ever been in the interior of the car in question.

The United States Probation Office filed a petition alleging that Salem had violated the conditions of his supervised release by, *inter alia,* possessing methamphetamine, a hypodermic needle, and a syringe. The undisputed evidence presented to the District Court on the drug possession charge was as follows: On September 23, 2004, Officer Nelson of the Riverside Police Department was patrolling the area around a motel. Officer Nelson saw Salem taking clothing items out of the open trunk of a Saturn parked in the laundry area of the Econo Lodge. Officer Nelson called out to Salem to ask if the car belonged to him, to which Salem responded that the car was not his but that he had permission to use it. Officer Nelson then asked Salem if he was on parole, and Salem responded affirmatively. Officer Nelson asked Salem to approach him. Salem started toward Officer Nelson, but when Officer Nelson reached out to grab his arm, Salem ran away. After giving chase, Riverside police officers found Salem hiding in an abandoned car and took him into custody. They found a key to the car on Salem's person. During an inventory search of the car, Officer Nelson flipped down the driver's side sunvisor, and out fell a small metal bowl containing a gram of methamphetamine and a black leather pouch containing a hypodermic needle and syringe.

The District Court found that Salem possessed the methamphetamine, hypodermic needle, and syringe found in the car for two reasons: First, the district court inferred control over the drugs found in the *interior* of the car, out of plain view, because Officer Nelson saw Salem leaning over the car and taking items out of the *trunk* of the car. Second, the district court noted that, when Nelson asked Salem to approach him, Salem started to approach Officer Nelson and then suddenly ran. From this, the district court inferred that Salem knew there were drugs in the car. I believe that both of these conclusions were clear error.

Constructive possession requires "that a person knowingly exercise control over or the right to control a thing." CALJIC § 12.00. Constructive possession does not require that the defendant have exclusive access to the place where contraband is discovered. *People v. Rushing,* 209 Cal. App.3d 618, 257 Cal.Rptr. 286, 289 (1989). But where a defendant does not have exclusive control over the place where contraband is found, "opportunity of access to [that] place ... without more, is insufficient to support a finding of unlawful possession." *People v. Glass,* 44 Cal.App.3d 772, 118 Cal.Rptr. 797, 800 (1975); *see also People v. Land,* 30 Cal.App.4th 220, 35 Cal.Rptr.2d 544, 547 (1994) ("Mere presence near the stolen property, or access to the location where the stolen property is found is not sufficient evidence of possession, standing alone....").

"[N]o sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of [constructive possession]," *People v. Hutchinson* 71 Cal.2d 342, 345, 78 Cal.Rptr. 196, 455 P.2d 132 (1969) (citations omitted), but there must be some particularized connection between the defendant and the contraband in cases where

defendant does not have exclusive access. For example, defendant's proximity to the contraband is probative where a defendant is found immediately next to the contraband. *See, e.g., Glass,* 118 Cal.Rptr. at 799–800 (finding constructive possession of pills that fell to the floor when defendant got out of bed, and pills found under defendant's pillow; but rejecting constructive possession of drugs found in the living room, because there was no showing that defendant, as a visitor in the house, had control over that area). Proximity of defendant's personal possessions to contraband is probative if those items were close enough to the contraband to infer that the same person owned both. *See Mosqueda v. Smith,* 2000 WL 96011, at *1, *3 (9th Cir. Jan.27, 2000) (unpublished) (concluding defendant, who admitted he owned the gun on top of the refrigerator, was also the owner of a wallet on top of the refrigerator containing drug proceeds; it was "reasonable to deduce that the wallet was placed on the refrigerator by the same person who placed the gun there"); *People v. Kipnis,* 5 Cal.App.3d 980, 85 Cal.Rptr. 547, 549 (1970) (finding constructive possession where "marijuana literally dripped from the car and its occupants," including the pocket of defendant's jacket).

The factual permutations are endless. But the common thread in cases finding constructive possession is a clear and unmistakable connection between defendant and the contraband that warrants a finding of dominion and control.

In this case, it is difficult to draw such a connection between Salem and the drugs or drug paraphernalia so as to support the court's finding of dominion and control.

Salem did not have exclusive access to the car—he had borrowed the car from another person—and neither Salem nor his possessions were in immediate proximity to the drugs or drug paraphernalia. The facts show only access to the car, not control: there was no evidence that Salem had ever been in the interior of the car, that he had driven the car, that his fingerprints were on the interior of the car, or that the engine was warm when the police found Salem near the trunk.[1] He had the key to the car, but, again, a key is only evidence of access. True, Salem was taking clothes out of the trunk of the car. But the government did not show that the clothes in the trunk belonged to Salem. Even if the government had made such a showing, the clothes were not so close to the contraband that it would be reasonable to infer that the same person who put the clothes in the trunk also put the contraband in the driver's side visor. The government did not present any evidence about Robert Gutierrez, the owner of the car, who, for all we know, could have been in the motel and could have given Salem his keys and asked Salem to retrieve his clothes. To hold that Salem had constructive possession of the contraband tucked behind the visor of the car stretches this concept too far.

We come, then, to the more crucial error in my mind: the finding that Salem knew that there were drugs in the car because he fled. It appears that the district court found that Salem knew there were drugs in the car based almost exclusively on Salem's flight, and largely as an afterthought. The record shows that the district court had already concluded that Salem possessed the drugs when defense

---

1. Patrol Officer Nelson mentioned, *on re-direct,* "I think the passenger side front door was open." Such an ambivalent statement on such an important point can hardly be credited, especially where it does not appear in the officer's contemporaneous report, in the officer's pre-prepared declaration (in lieu of direct examination), or even on cross-examination.

counsel reminded the court that it first had to make a finding as to knowledge. The court asked defense counsel: "And there I would have to take into account the full scenario, that is, the defendant being observed as [the police officer] testified, that he was called over and came over, he answered some questions and then he fled, and he said he was in a borrowed car." The court then concluded, without more: "Well, I find circumstantially that there is enough by preponderance of the evidence to find that he did commit those violations."

Nothing in the officer's initial observation showed that defendant knew there were drugs or drug paraphernalia in the car, and no evidence was adduced that he was "in [the] borrowed car" at all. As I stated above, I believe a finding that he was in the car is problematic, let alone that he knew of contents that were tucked away under the visor, not in plain view. As such, the only remaining evidence that Salem knew there were drugs in the car is the fact that he fled the scene, which the law makes *legally* insufficient and therefore clear error.

California's jury instructions make clear that flight alone does not establish guilt. *See* CALJIC § 2.52 ("The flight ... of a person after the commission of a crime or after he/she is accused of a crime is not sufficient in itself to establish his/her guilt."). But even if flight alone were sufficient to established knowledge of contraband, the inferences to be drawn from flight were especially weak in this case. To find knowledge based on the fact of flight requires several inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; *(3) from consciousness of guilt to consciousness of guilt concerning the crime charged;* and (4) from consciousness of guilt concerning the crime charged to actu-al guilt of the crime charged." *United States v. Silverman*, 861 F.2d 571, 581 (9th Cir.1988) (emphasis added) (citations omitted). "The inference from proof of an unfocused consciousness of guilt to consciousness of guilt concerning the crime charged has proven especially problematic. Flight and concealment of identity can be consistent with innocence, or with guilt of misconduct unknown to the Government." *Id.*

In Salem's case, the second and third steps are problematic because Salem had strong independent reasons to flee the sheriff. First, Salem suffered horrendous abuse until the age of fifteen at the hand of his father, a deputy sheriff. The fact that he was coming toward the officer and yet fled when the officer went to grab him might have been pure instinct. Second, Salem was in violation of his supervised release from a federal sentence. When such facts exist, the inference that can be drawn from flight is questionable. "In cases that involve professional criminals, there may be a problem in inferring that the cause of the flight was the charged crime rather than some other wrongdoing." CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5181 (1978); *see also, e.g., Mack v. State*, 650 So.2d 1289, 1308–10 (Miss.1994) (holding that the jury should not hear evidence of flight where defendant was an escapee and was driving a stolen vehicle, because the defendant's independent reason—apart from cognizance of guilt—to flee the scene made his flight more prejudicial than probative); *Guy v. State*, 108 Nev. 770, 839 P.2d 578, 583 (1992) (holding that the jury should not have been given a flight instruction where, "[g]iven appellant's criminal proclivities, there are numerous possibilities as to why he fled from the police on April 20, 1990."). Where there are several cogent reasons that the defendant might flee, flight is simply not

very probative. In my mind, the court clearly erred by putting so much weight on Salem's flight.

We must, as the majority's decision states, give deference to the district court's factual findings. But here, the law requires something in addition to access to prove control, something in addition to flight to prove knowledge. Where no such evidence exists, the evidence is *legally* insufficient to support the court's finding. Accordingly, I dissent.