Filed 11/25/13  P. v. Kent CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID NEIL KENT,<br><br>    Defendant and Appellant. | G047157<br><br>(Super. Ct. No. 06WF3671)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed.

Fay Arfa for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted David Neil Kent of possessing child pornography (Pen. Code, § 311.11, subd. (a); all statutory references are to the Penal Code unless noted), attempting to distribute child pornography (§ 311.2, subd. (c); § 664), and distributing child pornography (§ 311.2 (c)). It also convicted him of possessing methamphetamine for sale (Health & Saf. Code, § 11378) and possessing cocaine (Health & Saf. Code, § 11350). Kent contends there is insufficient evidence to support the convictions, the prosecution failed to disclose exculpatory evidence (*Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*)), trial counsel rendered ineffective assistance of counsel by failing to investigate and present exculpatory evidence, failing to move to quash a search warrant, and failing to request a pinpoint instruction concerning possession of adult pornography. Finally, he asserts the trial court abused its discretion by failing to reduce the offenses to misdemeanors (§ 17, subd. (b)). For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Casey Van Mersbergen testified he met Kent through a mutual friend in April 2005. They became sexual partners and shared methamphetamine during their weekly visits.

In August or September 2006, Cypress police arrested Van Mersbergen for driving under the influence. At the time, Van Mersbergen was "hooked on methamphetamine," on probation, and in a court-ordered drug treatment diversion program. He had suffered several prior convictions, including statutory rape of a 13-year-old, burglary, possession of stolen checks, and possession of drug paraphernalia. To improve his precarious legal predicament, Van Mersbergen offered his services as an informant. Officers gave Van Mersbergen the phone number of narcotics Detective Michael Wintersole and told Van Mersbergen to call if he could "help them out."

2

Van Mersbergen phoned Wintersole a few weeks later and agreed to help out with "drug connections." He subsequently provided reliable information that helped Wintersole make "two [drug] busts."

Around November 25, 2006, Van Mersbergen informed Wintersole he had seen child pornography on Kent's computer. Van Mersbergen felt uncomfortable because he had "nieces and nephews, and that's just not what I'm into." Kent worked at Disneyland around children, and Van Mersbergen wanted to "prevent it from going any further." At Wintersole's request, Van Mersbergen photographed a pornographic image from Kent's television or computer monitor using his cell phone and showed it to Wintersole.

On November 29, Van Mersbergen called Kent at Wintersole's request to set up a meeting ostensibly so Van Mersbergen could obtain child pornography. Van Mersbergen asked Kent for copies of the "kiddie porn" he had seen in earlier visits. Before driving Van Mersbergen to Kent's apartment, Wintersole patted Van Mersbergen down to make sure he did not have any contraband, and then affixed an audio monitoring device to Van Mersbergen's body before Van Mersbergen entered Kent's residence. Van Mersbergen and Kent went into Kent's bedroom and smoked methamphetamine supplied by Kent. Kent urged Van Mersbergen to make sure the pornographic material did not fall into the wrong hands because it could be traced back to his computer, but Kent's efforts to create a disk failed.

The following day, after Wintersole again searched Van Mersbergen and gave him an audio monitoring device, Van Mersbergen returned to Kent's residence. Kent gave Van Mersbergen two disks, and again warned him to be careful with the

3

material.  The audiotape of the 20-minute encounter, much of which was unintelligible,[1] indicated Van Mersbergen instructed Kent in how to use the computer.  Van Mersbergen left the apartment and gave the disks to Wintersole.  The parties stipulated the disks contained child pornography.

Van Mersbergen spoke with Kent after Kent's arrest and release from jail.  Kent asked Van Mersbergen to sign a statement that Van Mersbergen "brought a stack of DVD's to David Kent's house.  There were about 10 of them and I don't really know what they were cause they were burned DVD's that I recieved [*sic*] from a friend."  Van Mersbergen agreed to sign the statement to avoid jeopardizing his status as a confidential informant.

Van Mersbergen testified he was "trying to . . . work" his case off with Cypress police, but ultimately did not "get any consideration" because he missed a court date and absconded.  He did not tell Wintersole that Kent had methamphetamine.  Van Mersbergen told a defense attorney or investigator in December 2007 he believed Kent may have downloaded the files through a peer-to-peer file sharing network called "Limewire."  According to Van Mersbergen, people can misname files on Limewire and "by accident you get child pornography" while trying to download something else.

Wintersole and other officers executed a search warrant for Kent's home on December 6, 2006.  They seized his computer, several hard drives, hundreds of VHS tapes, and thousands of CD's.  Of the 500 or so disks reviewed, 48 contained child pornography.  Officers found $900 in cash and Kent's passport in the top drawer of a nightstand.  In a small black plastic basket under the television stand, officers discovered

---

[1]  At the motion for new trial, trial counsel stated he listened to the tape and heard Van Mersbergen ask for "kiddie porn" and Kent reply "OK."  Believing the prosecutor had not listened closely enough, counsel was leery of any action that would focus attention on the tape and cause the prosecutor to listen to the tape more closely.

a small digital scale, several used and unused small (one-inch square) Ziploc plastic baggies, two blue mini M&M containers that held vials containing a white crystalline substance, and a straw. A plastic pencil box contained two additional mini M&M containers and more unused baggies. Officers found three methamphetamine smoking pipes in the general area under the television cabinet. Wintersole also found "handwritten notes" near baggies that appeared to be a "conversion chart" or equivalency tables showing the relationship of weight in grams and ounces to dollar amounts. Wintersole explained "people who are involved in the sales of narcotics will use" these charts "to make sure that they can measure out the proper amount to sell . . . ."

Based on the search of Kent's residence, Wintersole opined Kent was involved in the "selling or furnishing of narcotics," and he possessed methamphetamine for "the purposes of sales or furnishing." The parties stipulated officers seized 3.73 grams of methamphetamine, worth about $150, and 46 milligrams of cocaine.

According to computer forensics expert Andreas Spruill, one of Kent's hard drives contained 30 files of child pornography in a folder called "PVT." The file names were descriptive of the child pornography depicted in the files, such as, "12yo Boy Jerks Off With Legs Spread.mpg." The files had been created on Kent's computer between August 2005 and November 2006. A day planner or calendar seized from Kent's bedroom contained user names and passwords for various Web sites and programs, including a peer-to-peer file sharing program that could have been used to download pornographic files. A notebook found in Kent's bedroom contained words in English and French, such as "boys/garçon," "young/Jeunes," "virgin" and "teen," that could be used to search the internet for child pornography, although they also could be used to find permissible adult material. Spruill's investigation led him to conclude Kent's "computer

5

system was the system that was used to generate the content onto" the DVD's Kent gave to Van Mersbergen. Spruill determined the files had been burned to the DVD's on November 23, 2006. On November 28, the operating system on the hard drive containing the child pornography was reinstalled.

Following trial in July 2011, the jury convicted Kent as noted above. The court imposed a sentence of four years and four months, but suspended execution of the sentence and placed Kent on probation with various terms and conditions, including a 365-day jail term and lifetime registration as a sex offender.

II

DISCUSSION

A.   *Sufficiency of the Evidence*

Kent challenges the sufficiency of the evidence to support his convictions, arguing, "[t]he prosecution's case rested largely on the testimony of [Van Mersbergen], the prosecution's 'star' witness. [Van Mersbergen], a convicted felon, had personal motives to set up Kent and to testify against him. [He] had worked as a criminal informant and needed leniency from the police."

On appeal, we must view the record in the light most favorable to the judgment below. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578 (*Johnson*).) The test is whether substantial evidence supports the verdict (*Johnson,* at p. 577). (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) It is the jury's exclusive province to weigh the evidence, assess the credibility of the witnesses, and resolve conflicts in the testimony. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330(*Sanchez*).) An appellant "bears an enormous burden" in challenging the sufficiency of the evidence. (*Sanchez,* at p. 330.)

6

The evidence recounted above amply supports the child pornography convictions.[2] Wintersole, who searched Van Mersbergen before he entered Kent's home, and overheard Kent warn Van Mersbergen to make sure the disks did not fall into the wrong hands because they could be traced back to his computer, corroborated the informant's testimony. The subsequent search of Kent's bedroom uncovered 48 disks containing child pornography, 30 pornographic files on one of Kent's computer hard drives matching files on the disks obtained by Van Mersbergen, and writings tied to Kent containing login information and pornographic search terms. Based on this evidence, the jury reasonably could reject Kent's theory Van Mersbergen planted the child

---

[2]    Section 311.11, subdivision (a) provides, "Every person who knowingly possesses or controls any matter, representation of information, data, or image, . . . the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a felony and shall be punished by imprisonment in the state prison, or a county jail for up to one year, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both the fine and imprisonment."

Section 311.2, subdivision (c) provides, "Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, produces, develops, duplicates, or prints any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, with intent to distribute or exhibit to, or to exchange with, a person 18 years of age or older, or who offers to distribute, distributes, or exhibits to, or exchanges with, a person 18 years of age or older any matter, knowing that the matter depicts a person under the age of 18 years personally engaging in or personally simulating sexual conduct, as defined in Section 311.4, shall be punished by imprisonment in the county jail for up to one year, or by a fine not exceeding two thousand dollars ($2,000), or by both that fine and imprisonment, or by imprisonment in the state prison. It is not necessary to prove commercial consideration or that the matter is obscene in order to establish a violation of this subdivision. If a person has been previously convicted of a violation of this subdivision, he or she is guilty of a felony."

7

pornography on Kent's computer, which according to the expert had been acquired and stored between August 2005 and November 2006.

Kent also argues "based on [Van Mersbergen's] admitted drug use and his documented drug convictions, it can reasonably be inferred that [he], not Kent, possessed the methamphetamine." The issue, of course, is not whether the jury could have adopted this inference, but whether substantial evidence supports the inference they did adopt: Kent possessed the contraband. To prove Kent possessed methamphetamine for sale, the prosecution bore the burden to show Kent knowingly possessed methamphetamine in a useable amount and intended to sell it. (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1175; see also *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 [essential elements of possession of a controlled substance are dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character]; CALCRIM No. 2302.

As recounted above, Van Mersbergen testified he and Kent had smoked methamphetamine together on prior occasions. The police found the methamphetamine, along with indicia of drug dealing in Kent's bedroom almost a week after Van Mersbergen last visited the apartment. There was ample evidence Kent possessed methamphetamine.

Kent also argues the only evidence connecting Kent to possessing methamphetamine "for *sale* was Wintersole's self serving and unsupported opinion." (Italics added.) The evidence amply supported the jury's reliance on Wintersole's opinion. In cases involving possession of controlled substances for sale, an experienced officer may offer an opinion the substance is "held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such

8

testimony convictions of possession for purpose of sale have been upheld." (*People v. Newman* (1971) 5 Cal.3d 48, 53, disapproved on another point in *People v. Daniels* (1975) 14 Cal.3d 857, 862.)

Wintersole based his opinion on the quantity of drugs and other indicia of selling activity, including $900 in cash found in Kent's nightstand, the digital scale, small Ziploc plastic baggies, and the "conversion chart" showing the relationship of grams and ounces to dollar amounts that "people who are involved in the sales of narcotics will use . . . to make sure that they can measure out the proper amount to sell." This evidence is more than enough to support Kent's conviction.

B.    *Failure to Disclose Photographs of Kent's Apartment and Bedroom Did Not Constitute Brady Error*

Kent hired new counsel after his conviction and moved for a new trial, citing *Brady v. Maryland* (1963) 373 U.S. 83 and related authority. He complained that while the prosecution provided pictures of "the contraband [seized during execution of the search warrant] . . . no pictures of the premises, either before or after execution of the search warrant were provided. The photographs had importance to prove the location of the contraband allegedly found in Kent's house. Without the photographs, trial counsel could not show that Kent could not have known about the contraband hidden in his house."

In response to Kent's motion, Wintersole admitted he had "not previously provided" 48 photos of Kent's home taken during execution of the warrant. The prosecutor argued the pictures did not undermine the prosecution's case because "the drugs and paraphernalia were all found in one location in a basket underneath the TV stand. The drugs were not found hidden underneath another object as if someone placed

9

it there on purpose without Kent's knowledge. If that was the case, it might have been relevant to show pictures of Kent's room in a state of disarray in order to support the theory that someone had placed the drugs there without Kent's knowledge. . . . "

Kent replied the "photo of the TV cabinet shows a complete mess and unless the jurors could see for themselves where the police found the contraband, the jurors could not have properly determined whether or not Kent actually knew about the drugs. [] The photo shows the TV cabinet loaded with junk and shows a cabinet, not a TV stand." He quoted Wintersole's trial testimony: "Under the TV stand, I located two small plastic crates. One looked very similar to a children's pencil box, and the other one looked like a little black short basket; you know, it had lines and it wasn't a solid piece. More like a basket. That would be here, like under the TV stand." Kent noted, "The photos of the TV stand do not show any 'basket containing drugs and paraphernalia.' [] If the drugs and paraphernalia were hidden underneath the TV cabinet, Kent could not have known the presence of any drugs. [¶] Even worse, the photographs show how messy Kent kept his house. The prosecution had to prove that Kent knew about the drugs. Because Kent kept his house so messy, he likely would not have known about anything unusual in his room. [] In light of the messy condition of Kent's house, the jury would have found that Kent could not have known about any contraband or [child pornography]."

The trial court found failure to disclose the photos constituted a section 1054 discovery violation[3] but not a *Brady* violation because the evidence was not

[3]       Discovery rules generally require the parties to make disclosures at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial. (§ 1054.7.) Where a party has not complied with section 1054.1, the court may make any necessary order, including immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness, or the presentation of real evidence, continuance

"material to guilt or punishment," explaining there was not a "reasonable probability" of a different result.

Brady, *supra*, 373 U.S. 83 requires the prosecution to disclose material exculpatory evidence whether or not the defendant makes a request. (*In re Brown* (1998) 17 Cal.4th 873, 879.) Evidence must be disclosed if it "'helps the defense or hurts the prosecution, as by impeaching a prosecution witness. [Citations.] Evidence is material if there is a reasonable probability its disclosure would have altered the trial result. [Citation.] Materiality includes consideration of the effect of the nondisclosure on defense investigations and trial strategies." (*People v. Verdugo* (2010) 50 Cal.4th 263, 279; *In re Sassounian* (1995) 9 Cal.4th 535, 543-544 [evidence is favorable if it helps the defendant or hurts the prosecution, but it is material only if, considering the totality of the circumstances, there is a reasonable probability that, had the evidence been disclosed, the result would have been different]. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." (*Kyles v. Whitley* (1995) 514 U.S. 419, 434 (*Kyles*); *Strickler v. Greene* (1999) 527 U.S. 263, 281 [materiality requires reasonable probability the suppressed evidence would have produced a different verdict].) If the police possess evidence that may exonerate a defendant, nondisclosure of that evidence violates due process even though the prosecutor was unaware of the evidence. (*Kyles, supra,* 514 U.S. 440.)

---

of the matter, any other lawful order, and may advise the jury of any failure or refusal to disclose and of any untimely disclosure. (§ 1054.5, subd. (b).)

11

The issue here is not whether the prosecution erred by failing to disclose the photos (it did), but whether there is a reasonable probability that, had these photos been disclosed, the result would have been different.

Kent faults Wintersole's description of the place where the drugs and paraphernalia were found as a "TV stand." The photos depict a TV cabinet or armoire with a television on a shelf, two shelves below the television, and four drawers beneath the shelves. Wintersole's use of "stand" rather than "cabinet" does not appear significant, and the photos do not contradict Wintersole's testimony about where he found the basket and pencil box.

Kent asserts the photos might have undermined Wintersole's credibility and assisted the jury in determining where evidence was found and in what condition. Defense counsel did not question Wintersole concerning the condition of the house or room, or the exact location of drugs. Kent's trial attorney conceded during closing arguments the drugs were not "the major focus of the case," and he only asked "Wintersole about five questions about the drugs." Counsel conceded "Kent probably at some point furnished meth to his friends," but argued the drug was not possessed for sale based on the packaging and the amount of drugs ($150 worth), which Wintersole acknowledged was "as consistent with personal use as it was with sale." Counsel stated, "Now, is it possible [Van Mersbergen] could have put those there as well? Yeah. But I'm not going to argue that to you. I think the evidence is what it is on the drugs. There are pipes there, everything else. I mean, it's clear these people use meth together." As a matter of trial tactics, to gain credibility with the jury and to establish Kent's relationship with Van Mersbergen, counsel conceded Kent possessed the methamphetamine. These photos do not undermine the evidence showing Kent possessed child pornography and

12

Kent suggests no reason why Van Mersbergen would plant drugs and money in Kent's apartment, but not the pornographic material. The photos therefore would not have affected defense investigations, trial strategies, or the jury's deliberations concerning the drugs.

C. *Kent Does Not Establish Trial Counsel's Representation Fell Below an Objective Standard of Reasonableness, Nor a Reasonable Probability the Result of the Proceeding Would Have Been Different*

Kent next argues trial counsel rendered ineffective assistance (IAC) by failing to visit the crime scene, and missed evidence showing Wintersole could not have seen Kent open the door to admit Van Mersbergen. He also argues trial counsel committed IAC by failing to move to quash the search warrant based on Wintersole's misstatement. Counsel allegedly overlooked evidence that Van Mersbergen and others regularly came to Kent's home at all hours, even when Kent was not present, Van Mersbergen and others entered Kent's bedroom and used his computer, and Kent's roommate McKay and others did not see any drugs or child pornography. He also faults counsel for failing to present photographs of the interior of Kent's home, and failing to object to enlarged photos of the drugs and paraphernalia. He complains counsel failed to present evidence to show an investigator's preview of Kent's hard drive at the time officers executed the search warrant compromised the integrity and accuracy of the computer data. Finally, he says counsel should have requested a pinpoint instruction that Kent's "possession of adult pornography had nothing to do with any illegal possession of [child pornography]."

"To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard

13

of reasonableness, but also resultant prejudice. [Citation.]'" (*People v. Hart* (1999) 20 Cal.4th 546, 623.) Prejudice occurs only if the record demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Lucero* (2000) 23 Cal.4th 692, 728.)

Kent has not demonstrated counsel's performance was deficient or the result of the trial would have been different had he employed the strategies Kent now claims should have been followed. Kent has not provided any evidence linking other visitors to the pornography or drugs found in his bedroom. Evidence Wintersole could not have seen Kent's front door, nor have seen Kent open the door to let Van Mersbergen inside, did not establish ineffectiveness. Wintersole testified during trial and at the new trial motion he could see the front door from his vantage point, and the trial court found his testimony credible. As noted by the Attorney General, the defense focused its attack on Van Mersbergen, who arguably had a motive and opportunity to plant the evidence. Challenging Wintersole's credibility or arguing other persons could have planted child pornography in Kent's home undermined that strategy. Counsel also made the tactical decision, with Kent's assent, to concede possession of drugs for personal use to gain credibility with the jury, an accepted trial tactic when arguing the contraband was not possessed for sale. (See *People v. Bolin* (1998) 18 Cal.4th 297, 334-335.) And showing a bevy of visitors beating a path to Kent's door would suggest Kent was selling methamphetamine and open for business at all hours.

Although the trial court found Wintersole credible, the trial court also stated it would not have quashed the warrant even if Wintersole's statement about seeing Kent

14

open the door had been omitted from the search warrant affidavit (see *Franks v. Delaware* (1978) 438 U.S. 154, 163) based on other information in the warrant application. Van Mersbergen knew Kent, and had previously provided reliable information in other cases. He supplied Wintersole with a photo of child pornography taken from Kent's computer monitor. Wintersole heard Van Mersbergen speaking with Kent inside the home over the wire. Moreover, as noted above, trial counsel did not want to draw attention to the audiotape, which contained Kent's statement agreeing to supply Van Mersbergen with the pornography, and a motion to quash might have attracted unwanted attention to that evidence. Kent has not established trial counsel was ineffective by failing to move to quash the warrant. There is no reasonable probability such a motion would have been granted.

For the reasons mentioned in the *Brady* section above, the failure to discover or present photographic evidence of Kent's cluttered home and bedroom taken a week after Van Mersbergen visited does not undermine confidence in the trial's outcome. Trial counsel admitted it did not occur to him to object to the enlarged photos of the drugs and paraphernalia as unduly prejudicial, but it is hard to see how this was prejudicial. Even if we assume the trial court would have excluded the photos, we do not see how this would have affected the trial in any significant way.

Kent faults trial counsel's failure to present evidence that an investigator's preview of Kent's hard drive at the time of the search compromised the integrity and accuracy of the computer data. The record reflects trial counsel consulted an expert. The expert stated he could not help the defense on key issues, and had adverse opinions on other issues. Kent has not established trial counsel's investigation fell below professional norms. In his motion for new trial, Kent submitted a declaration from Jeff Fishbach, a

15

forensic technologist, stating the investigator's preview violated Department of Homeland Security guidelines ("[d]o not use computer or attempt to search for evidence"). It is likely this practice directive is meant for "first responders" so they will collect evidence in its original state. But the agent who turned on Kent's computer, Senior Special Agent David Melvin, was a digital forensics agent. Nothing suggests Melvin's preview altered or destroyed evidence favorable to Kent. Fishbach's declaration does not persuade us trial counsel was ineffective, or that a different result was reasonably probable.

As for a pinpoint instruction concerning adult pornography, nothing suggests jurors would have concluded Kent's possession of adult pornography was illegal, or that his possession of adult pornography had anything to do with illegal possession of child pornography. There was no danger jurors would confuse the issues, no need for a special instruction, and counsel did not act ineffectively by failing to request one.

E. *No Cumulative Error*

Because we find no merit in Kent's aforementioned challenges, his cumulative error argument also fails. Absent errors to cumulate, the cumulative error doctrine does not apply. (*People v. Staten* (2000) 24 Cal.4th 434, 464.)

E. *The Trial Court Did Not Abuse Its Discretion by Declining to Reduce Felonies to Misdemeanors*

Kent contends the court denied him "due process and a fair sentence" by declining to reduce his convictions to misdemeanors. We disagree.

Section 17 provides, "(b) When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail

16

under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [§] (1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170[;] [¶] . . . [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

Section 17 leaves the determination of the nature of the conviction to the trial court's discretion at sentencing. It applies to wobblers (alternative felony/misdemeanor crimes) and provides once the court has imposed a misdemeanor sentence, the offense becomes a misdemeanor for all purposes. (*People v. Trausch* (1995) 36 Cal.App.4th 1239, 1246.) "By its terms, the statute sets a broad generic standard. [Citation.] The governing canons are well established: 'This discretion . . . is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977 (*Alvarez*).) "The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (*Id.* at pp. 977-978.)

The court must consider "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as

17

evidenced by his behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing as those set forth in" the California Rules of Court. (*Alvarez, supra,* 14 Cal.4th at p. 978.) These objectives include protecting society, punishing the defendant, encouraging the defendant to lead a law abiding life in the future and deterring him from future offenses, deterring others from criminal conduct by demonstrating its consequences, preventing the defendant from committing new crimes by isolating him for the period of incarceration, and achieving uniformity in sentencing. (*Id.* at p. 978, fn. 5.)

Kent contends the Legislature elevated the child pornography offenses from misdemeanors to felonies or wobblers not long before Kent committed the offenses. He argues "[b]ased on the minimal amount of the CP found, the fact that one of the charges was a misdemeanor just days before the offense, based on Kent's minimal and very old criminal record, his successful completion of probation and other mitigating factors, the trial court should have reduced" the offenses.

Kent had an expunged 1990 conviction for grand theft of $4,600 and a 1993 misdemeanor for disturbing the peace. The trial court considered his record, mitigating evidence, and circumstances of the current crimes. The court stated the current crimes were "absolutely horrible. The exploitation of children involved in sexual matters is unconscionable." The amount of child pornography was not insignificant. Law enforcement sampled only 500 of the thousands of computer disks seized, and nearly 10 percent of the sample contained child pornography. The court acknowledged mitigating factors, noting Kent was employed, he distributed the child pornography only to an informant, he had many friends and supporters, he was an empathetic person, and he had rescued a woman from a plane crash when he was 18 years old. The court balanced the

18

factors by imposing a felony sentence, suspending execution of the sentence, and placing Kent on probation. Kent has not met his burden to show the trial court abused its discretion in declining to reduce his child pornography offenses to misdemeanors.

III

DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL J.