Filed 7/24/14  P. v. Hannigan CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B252004 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA403165) |
| v. | |
| LINA DELILAH HANNIGAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Lina Delilah Hannigan was convicted, following a jury trial, of one count of possession for sale of methamphetamine in violation of Health and Safety Code section 11378, one count of sale or transportation of methamphetamine in violation of section 11379 and one count of conspiracy to commit sale or transportation of methamphetamine in violation of Penal Code section 182, subdivision (a)(1).[1]  The jury found true the allegation as to all three counts that the substance containing methamphetamine exceeded four kilograms within the meaning of Health and Safety Code section 11370.4, subdivision (b)(2).  The trial court sentenced appellant to a total term of seven years in state prison, consisting of the low term of two years for the Health and Safety Code section 11379 conviction plus five years for the section 11370.4 weight allegation.  The court stayed sentence on the remaining counts pursuant to Penal Code section 654.

Appellant appeals from the judgment of conviction, contending there is insufficient evidence to support her conviction.  She further contends the trial court erred in failing to instruct the jury that "transportation" means "transportation for the purpose of sale."  Appellant also requests that this Court review the sealed transcript of the in camera hearing on her *Pitchess*[2] motion.  We affirm the judgment of conviction.

Facts

Around noon on September 28, 2012, Lilah Bazurto drove from her house in Duarte to appellant's house in Glendora with about ten pounds of methamphetamine.

---

[1]  The jury found true the allegation that co-conspirator Juan Rocha agreed to sell 10 pounds of methamphetamine for $6,800 a pound, an overt act.  The jury made no finding on the second specified overt act, which allegedly occurred when co-conspirators appellant, Rocha, Lilah Bazurto and Juan Lopez "flashed" ten pounds of methamphetamine for a buyer to see at a gas station.  Appellant appears to understand the jury's failure to check either the True or Not True option as the equivalent of a not true finding.  We do not agree.  The verdict form stated that the jury found "at least one of the following overt acts to be true[.]"  Since the jury found the first overt act true, the jury may simply have never considered the second alleged act of flashing.

[2]  *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

Appellant and Bazurto are sisters. At appellant's house, Bazurto transferred a white handbag containing the methamphetamine directly from the vehicle she arrived in to appellant's Nissan Xterra.

Appellant drove Bazurto in the Xterra to Tacos Del Chino in South El Monte, about a fifteen to twenty minute drive. There, they met Jose Lopez and Juan Rocha. According to Bazurto and Rocha, there was a deal to sell the ten pounds of methamphetamine for $68,000. Rocha had been instructed by Pelon, a drug dealer, to meet two women in a black Xterra at Tacos Del Chino. The women would pick up Lopez and Rocha. Bazurto was supposed to take the money from the sale to a former boyfriend who was involved in the transaction. Bazurto, Rocha and Lopez all pled no contest to one count of transporting methamphetamine, and all testified as prosecution witnesses at appellant's trial.

Rocha told Bazurto that the buyer was at a gas station. Rocha and Lopez got into the Xterra, and appellant drove to the USA gas station, which was several blocks away.[3]

At the gas station, Rocha and Lopez got out of the Xterra and talked to the buyer. Rocha then returned to the Xterra and told Bazurto that the buyer wanted to see the drugs. The buyer then came over to the Xterra, and spoke with Bazurto in Spanish. Bazurto did not want to show the buyer the drugs, which according to her were zipped up in a white bag under the dashboard. According to Rocha's trial testimony, however, Bazurto and Lopez went to the back of the Xterra, opened the hatch, took out the white bag and showed the methamphetamine to the buyer.[4] The buyer said he was going to get the money.

---

[3] Lopez testified that he had never met appellant or Bazurto before September 28, and he merely asked them to give him a ride home. They went first to Karina's Tacos (next to the gas station) because appellant and Bazurto wanted to eat there.

[4] Respondent contends Rocha testified that appellant also went to the rear of the Xterra. Rocha was asked: "And did you see [appellant], Miss Bazurto and Mr. Lopez go to the back of the Xterra, see Miss Bazurto open the hatch and take out the white bag and shoe the methamphetamine to the buyer?" Rocha replied: "Yes, but it wasn't her. It was Miss Bazurto, Lopez and Miss Bazurto opened up the bag like this. (Indicating)."

Appellant moved the Xterra next door to Karina's Tacos. She and Bazurto went inside to get something to eat. About thirty minutes later, Rocha and Lopez came to Karina's and said that the buyer "was acting funny." Bazurto said, "Well, forget it, forget it." Bazurto asked appellant if they could take Lopez and Rocha back to Tacos Del Chino, and appellant agreed.

Once the Xterra left the parking lot, it was stopped by law enforcement. According to Los Angeles County Sheriff's Detective Roger Ballesteros, who initiated the stop, appellant was driving, Bazurto was in the front passenger seat and Lopez and Rocha were in the rear seat. Detective Ballesteros saw a Ziploc bag containing a substance resembling methamphetamine sticking out of a white handbag on the passenger side floorboard. The people in the Xterra all appeared nervous. Once the occupants had been removed from the Xterra, Detective Ballesteros looked inside the white handbag and saw ten bags of the substance resembling methamphetamine. Subsequent tests confirmed that all the bags contained methamphetamine, with a combined weight of 4,456 grams.

Bazurto falsely told police that she knew nothing about the two men in the Xterra and nothing about the methamphetamine. She said the men walked up to the vehicle and asked for a ride. One was carrying a white bag. Appellant told Detective Ballesteros that she and Bazurto had gone to Karina's Tacos to eat and had met Lopez and Rocha there. She said the two men asked for a ride. Rocha was carrying the bag, and originally got in the front seat but then moved to the back, leaving his bag on the front floor.

Lopez first told Detective Ballesteros that he met appellant and Bazurto at Karina's Tacos. Then he said he had seen them at Tacos Del Chino and approached them because he found Bazurto attractive. Lopez said that when he got into the Xterra, he noticed a white bag and saw that it contained methamphetamine. According to Lopez,

---

Detective Ballesteros did testify that Rocha told him that all four occupants of the Xterra went to the rear, including appellant.

4

when the Xterra was being pulled over by police, appellant said, "We're screwed," or something similar.

Rocha told Detective Ballesteros that he was the middle man in a deal involving ten pounds of methamphetamine being sold for $68,000. Rocha's statement to the detective differed somewhat from his later trial testimony. Rocha told the detective that he and Lopez were going to keep $5,000 and appellant and Bazurto would keep the rest. Rocha said they met the buyer at the gas station. All four occupants of the Xterra got out, with Bazurto carrying the white handbag. All four of the occupants and the buyer went to the rear of the Xterra to show the buyer the drugs. The buyer wanted to change the location of the deal, but Lopez contacted the supplier, who said that the deal was not going to happen.

Los Angeles County Sheriff's Detective Barry Fitchew was part of the investigation in his case, and qualified as an expert in narcotics usage and sales. He observed the occupants of the Xterra as they left the gas station, and saw no sign that they were under the influence of methamphetamine. According to Detective Fitchew, ten pounds of methamphetamine would contain about 45,000 doses, and there is no reason other than sales that a person would possess such a large amount of the drug. In the detective's opinion, during a major narcotics transaction such as one involving ten pounds of methamphetamine, the people involved in the transaction would not let any uninvolved person get close to the drugs.

In her defense, appellant presented the testimony of Los Angeles County Sherriff's Deputy Dian Halthon, Detective's Ballesteros's partner. Deputy Halthon approached the passenger side of the Xterra after the traffic stop. He did not see a bag on the front floorboard. He did not see the bag until everyone got out of the vehicle and Deputy Ballesteros brought the bag out.

Appellant's private investigator, Naum Ware, testified that he had determined that with the white bag zipped shut, no methamphetamine was visible.

5

Discussion

1. Sufficiency of the evidence

Appellant contends there is insufficient evidence to support her conviction for possession for sale of the methamphetamine because the evidence showed that Bazurto had exclusive dominion and control over the methamphetamine. She further contends that a conviction unsupported by substantial evidence violates her federal constitutional rights to due process and a jury trial and also her state constitutional right to due process. There is sufficient evidence to support appellant's conviction.

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' We do not reweigh evidence or reevaluate a witness's credibility. [Citations.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

"The essential elements of the offense of unlawful possession of a controlled substance are actual or constructive possession in an amount sufficient to be used as a controlled substance with knowledge of its presence and its nature as a controlled substance. The elements may be proven by circumstantial evidence. [Citations.]" (*People v. Rushing* (1989) 209 Cal.App.3d 618, 621-622.)

"Actual or constructive possession is the right to exercise dominion and control over the contraband or the right to exercise dominion and control over the place where it is found. [Citation.] Exclusive possession is not necessary." (*People v. Rushing, supra,*

6

209 Cal.App.3d at p. 622.)  Constructive possession "may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.  [Citation.]" (*People v. Williams* (1971) 5 Cal.3d 211, 215.)

It is well established that constructive possession may be found when the contraband is found in the defendant's car in a location that is readily accessible to the defendant, even though there are multiple passengers in the car.  (See,. e.g., *People v. Busch* (2010) 187 Cal.App.4th 150, 161-162 [contraband found in car's central console]; *People v. Newman* (1971) 5 Cal.3d 48, 53 [contraband found in envelope on the tape deck below the dashboard]; see also *People v. Austin* (1994) 23 Cal.App.4th 1596, 1609 [defendants who took key from car's driver and opened the trunk where the contraband was stored was in constructive possession of the contraband because it was immediately accessible to them in a place under their control].)

Appellant contends the evidence shows that the methamphetamine remained inside Bazurto's personal handbag and Bazurto maintained exclusive dominion and control over that handbag, keeping it on the passenger floorboard in front of her.  Appellant adds that she was carrying her own personal handbag which did not have contraband inside, and that she never acknowledged that she was aware of the methamphetamine in Bazurto's handbag.

There is evidence showing that the handbag containing the methamphetamine was not Bazurto's personal handbag.  Deputy Halthon testified that there were three handbags in the vehicle when it was stopped.  One was appellant's black handbag, one was Bazurto's personal handbag and one was the purse containing the methamphetamine.  Although a separate handbag for the methamphetamine is not a prerequisite to a reasonable inference of joint constructive possession, it certainly supports such an inference.

There is also evidence showing that a plastic bag of the methamphetamine was sticking out of the handbag and its contents were visible.  Lopez told police that the methamphetamine was visible when he got into the car, and that it appeared to be a large

7

quantity of methamphetamine. Deputy Ballesteros testified that the methamphetamine was visible when he removed the handbag from the car. Thus, it is reasonable to infer that the methamphetamine was visible to appellant. Further, Rocha told Detective Ballesteros that appellant was present at the rear of the Xterra when Bazurto showed the methamphetamine to the buyer, further supporting an inference that appellant was aware of the presence of the methamphetamine in her vehicle, and also supporting an inference that she was a participant in the drug deal.

More importantly, there is evidence that Bazurto did not exercise exclusive dominion and control over the handbag containing the methamphetamine. According to Bazurto, she twice left the handbag containing the methamphetamine in appellant's Xterra. When Bazurto first arrived at appellant's residence, she left the handbag in the Xterra while she went inside the house. Later, at the gas station, Bazurto left the handbag in the Xterra while she went into Katrina's Tacos to eat. The Xterra belonged to appellant and she drove it during the entire course of events. Clearly, appellant had the right to exercise dominion and control over the Xterra and did exercise that control. Both times that Bazurto left the methamphetamine unattended in the Xterra, appellant could have driven off with the methamphetamine and without Bazurto. This circumstance alone creates an inference that appellant had joint possession of the methamphetamine. (*People v. Rushing, supra,* 209 Cal.App.3d at p. 622 [possession includes the right to exercise dominion and control over the place where the contraband was found].) Further, according to Lopez, Bazurto left the handbag containing the methamphetamine on the front passenger seat floor board when she moved to the back seat and Lopez got into the front seat. Appellant remained in the driver's seat. This circumstance supports the an inference that appellant as well as Bazurto had the right to exercise dominion and control over the methamphetamine.

In addition, appellant made a number of false statements to police, which indicated consciousness of guilt, and which could show not only her knowledge of the presence of the methamphetamine, but her right to control the methamphetamine. (See *People v. Traylor* (1972) 23 Cal.App.3d 323, 334 [defendant's flight from the seat where

8

contraband was concealed was "evidence of defendant's guilt, tending to show both dominion and control and knowledge."].)

Since we have determined "that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation] as is the due process clause of article I, section 15 of the California Constitution."  (*People v. Osband* (1996) 13 Cal.4th 622, 690.)

2.  Health and Safety Code section 11379

Appellant contends, and respondent agrees, that she is entitled to the benefit of an amendment to Health and Safety Code section 11379 which adds a requirement that the transportation of a controlled substance be for the specific purpose of sale.  This amendment became effective after appellant's trial in this matter, but appellant contends, and respondent agrees, that the amendment must be applied retroactively to cases that are not yet final.  We agree that the amendment must be applied retroactively.  We find no benefit to appellant from the application of the amended statute.

a.  Retroactivity

Effective January 1, 2014, section 11379 was amended to add subdivision (c), which states, "For purposes of this section, 'transports' means to transport for sale."  The legislative history of the amendment shows that the Legislature intended to criminalize the transportation of drugs for the purpose of sale and not the transportation of drugs for non-sales purposes such as personal use.  (See Conc. in Sen. Amend. To Assem. Bill No. 721 (2013 Reg. Sess.) June 27, 2013, p. 3 ["This bill makes it expressly clear that a person charged with the felony must be in possession of drugs with the intent to sell. Under AB 721, a person in possession of drugs ONLY for personal use would remain eligible for drug possession charges.  However, personal use of drugs would no longer be eligible for a SECOND felony charge for transportation."].)

9

Absent a saving clause, an amended statute may operate retrospectively to a defendant whose appeal is not yet final.  (*People v. Wright* (2006) 40 Cal.4th 81, 90; *People v. Babylon* (1985) 39 Cal.3d 719, 722.)

Although there is a strong presumption that statutes apply prospectively, there are exceptions to that rule.  Where an amendment to a statute mitigates punishment and there is no saving clause, the amendment will operate retrospectively to lighten the punishment previously imposed.  (*In re Estrada* (1965) 63 Cal.2d 740, 748.)  Further, an amendment completely repealing criminal sanctions for an act applies retrospectively to criminal convictions which have not yet become final.  (*People v. Rossi* (1976) 18 Cal.3d 295, 301.)

There is no saving clause in the amendment to section 11379.  Appellant's conviction is not yet final.  Although this case does not present precisely the situation before the Court in *Estrada* or *Rossi*, the effect of the amendment to section 11379 is to remove sanctions for the transportation of drugs for personal use, and potentially reduce the punishment for a defendant for such transportation.  We agree with respondent that the reasoning and principles of *Estrada* and *Rossi* dictate that the amendment to section 11379 should apply to appellant.

b.  Application

The amendment to section 11379 requires the prosecution to prove that a defendant transported a controlled substance for the purpose of sale, and thus effectively adds an element to the offense.  Under general principles of the Sixth and Fourteenth Amendment of the United States Constitution, a criminal defendant is entitled to have a trier of fact determine all elements of a charged offense beyond a reasonable doubt.  (*United States v. Gaudin* (1995) 515 U.S. 506, 510.)  Since appellant's trial occurred before the effective date of the amendment, no jury has found that appellant transported the methamphetamine for purposes of sale.

When a jury does not determine all elements of a charged offense because the jury instructions omitted an element of the charged offense, the result is assessed under the

standard set forth in *Chapman v. California* (1967) 386 U.S. 18. (*People v. Flood* (1998) 18 Cal.4th 470, 491.) Under the *Chapman* test, the reviewing court asks if it is clear "'beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.'" (*People v. Mil* (2012) 53 Cal.4th 400, 417.) The court may also consider whether the absence of an element in one instruction was remedied by another instruction and whether the jury necessarily decided the factual question posed by the omitted element adversely to the appellant under other properly given instructions. (*People v. Burgener* (1986) 41 Cal.3d 505, 539 [other instruction]; *People v. Chatman* (2006) 38 Cal.4th 344, 392 [necessarily decided].) We apply this same standard of review when the jury was not instructed on an element because trial occurred before the effective date of the amendment adding the element. (See *People v. Wright, supra*, 40 Cal.4th at pp. 98-99 [applying instructional error analysis to analyze affect of retroactive application of affirmative defense to defendant].)

Here, the jury was instructed that in order to find appellant guilty of the count 1 charge of possession for sale of methamphetamine, the jury was required to find that appellant possessed the methamphetamine for purposes of sale. The jury did find appellant guilty on that count, and thus found that she possessed the methamphetamine for purposes of sale. Further, the jury found that the amount of methamphetamine exceeded four kilograms. There was uncontested expert testimony that this amount of methamphetamine amounted to about 45,000 doses and thus so far exceeded an amount appropriate for personal use that it must have been intended for sale. There was no evidence that appellant possessed the methamphetamine at any time other than the period when she was driving it around in her vehicle. Thus, logically she must have been transporting it for purposes of sale. Appellant's only defense was that she did not know the methamphetamine was in her vehicle, a defense that the jury rejected. Thus, we conclude beyond a reasonable doubt that appellant would not have received a more a more favorable result if the jury in this case had been instructed on the element of transportation for purposes of sale and would not receive a favorable outcome if this

11

charge were retried and the jury instructed on the amendment to Health and Safety Code section 11379.

### 3. *Pitchess* motion

Appellant requests that we independently review the sealed transcript of the in camera hearing on his *Pitchess* motion for discovery of peace officer personnel records.

The trial court granted appellant's motion for discovery of complaints of dishonesty by Deputies Ballesteros and Rosado. On February 8, 2013, the court conducted an in camera review of the deputies' records and determined that there were no discoverable records.

When requested to do so by an appellant, we independently review the transcript of the trial court's in camera *Pitchess* hearing to determine whether the trial court disclosed all relevant complaints. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) We have reviewed the transcript of the in camera hearing and conclude that the trial court did not abuse its discretion in ruling that there were no relevant records to disclose to appellant. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330 [court's ruling is reviewed for abuse of discretion].)

12

Disposition

The judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]


We concur:


TURNER, P.J.


KRIEGLER, J.

---

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13