Filed 1/6/26  P. v. Carrisosa CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F088701 |
| Plaintiff and Respondent, | (Super. Ct. No. MCR075037) |
| v. | |
| DAVID JOSEPH CARRISOSA, JR., | **OPINION** |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Madera County.  Katherine Rigby, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Dina Petrushenko and Carly Orozco, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Franson, Acting P. J., Peña, J., and DeSantos, J.

## INTRODUCTION

A jury convicted David Joseph Carrisosa, Jr. (defendant) of possession for sale of a controlled substance (Health & Saf. Code,[1] § 11378, count 1), sale or transportation of a controlled substance (§ 11379, subd. (a), count 2), and misdemeanor possession of a smoking device (§ 11364, subd. (a), count 3). Following a court trial, the trial court also found true an allegation defendant had suffered a prior strike conviction and an aggravating factor allegation.

On appeal, defendant argues counts 1 and 2 must be reversed because his counsel provided ineffective assistance by failing to object to a prosecution witness's opinion testimony that defendant was involved in narcotics transportation and distribution. Defendant contends the officer's opinion was inadmissible because it impermissibly addressed a question of law, usurped the jury's function as the trier of fact, and it directly addressed the issue of defendant's guilt. The People respond that defense counsel was not deficient in failing to object to such testimony. Alternatively, they argue defendant was not prejudiced by his counsel's failure to object.

We affirm.

## FACTUAL BACKGROUND

Defendant was charged with possession for sale of a controlled substance (§ 11378, count 1), sale or transportation of a controlled substance (§ 11379, subd. (a), count 2), and misdemeanor possession of a smoking device (§ 11364, subd. (a), count 3) after he was pulled over for a traffic infraction and officers seized contraband from his person and vehicle. Before trial, defendant asked to bifurcate allegations regarding a prior strike conviction and aggravating factors.

---

[1]     All further statutory references are to the Health and Safety Code, unless otherwise indicated.

**Prosecution Evidence[2]**

Corporal Shawn Fadley testified he had been with the Madera Police Department for approximately six years. Before becoming a corporal, Fadley was assigned to the Special Investigations Unit as a gang and narcotics undercover officer. He would work with confidential informants on narcotics cases and would specifically target people who were selling larger amounts. Fadley explained that he received basic training in the police academy in identifying controlled substances, specifically methamphetamine. He also received additional on-the-field training with a field training officer before he was released to make his own contacts with users. Fadley took additional training online for narcotics sales transportation and identification, a "Police Officer's Standard Training" (POST)-certified course. Fadley had investigated between 30 to 50 cases that became possible "sales" cases. He had investigated approximately 100 cases involving methamphetamine. When investigating a sale of methamphetamine case, Fadley looked for larger amounts of methamphetamine (more than a gram), scales (because dealers use them to weigh the amounts of methamphetamine), packaging material, such as sandwich bags, and cash in lower denominations for quicker transactions with purchasers.

Fadley testified he was on patrol with Detective Adrian Santoyo on August 9, 2022. While stopped at a stop sign, they observed a vehicle pass them without a front license plate, which was a violation of Vehicle Code section 5200, subdivision (a). They conducted an enforcement stop to speak with the driver. The vehicle pulled over; defendant was driving. Fadley testified defendant did not look happy. While on scene, Santoyo asked defendant to get out of the car and he complied. They searched defendant's person. Defendant had a plastic sandwich baggie containing

---

[2]    Before trial, defendant moved to suppress any evidence obtained after he exited his vehicle on the grounds the searching officer did not have reasonable suspicion and lacked probable cause to search defendant. The prosecution opposed the motion, and the trial court denied defendant's motion to suppress. Defendant filed a motion for reconsideration, which the court also denied.

methamphetamine in his left pocket. Defendant was asked if he had anything else illegal in his vehicle and defendant indicated he had a pipe in the center console of the vehicle. Santoyo located the pipe in the vehicle and then the officers detained defendant while they completed a search of the rest of the vehicle. Santoyo found a sock full of cash, approximately $185 in $1 bills, located in the backseat on the driver's side. Santoyo located packaging material—around 50 sandwich baggies consistent with the one defendant had in his left pocket—and they found three digital scales in the trunk. There was a larger amount of methamphetamine, which Fadley approximated to be 3.8 grams, found hidden inside one of the headrests.[3] Fadley testified, from his training and experience, when methamphetamine is possessed "for personal use," it is not typically hidden inside a vehicle, such as in the passenger headrest. Santoyo also found a black magnetic lockbox located in the trunk of the vehicle. Fadley explained, "[T]ypically when people are involved in narcotics sales, that's how they'll transport their narcotics from location to location. They'll put the narcotics inside of one of those boxes, lock it, and then attach it somewhere in the vehicle to the mechanics of it, typically the undercarriage." Fadley testified this is not something he would typically see for someone who is using methamphetamine for personal use.

Fadley expressed his opinion in response to questioning as follows:

> "[PROSECUTOR:] Now, … based on the evidence that you found on scene and the methamphetamine that you found on scene, were you ever formed [*sic*] an opinion—did your investigation lead you to any belief with regards to [defendant]?
>
> "[FADLEY:] Yes. Believed that he was transporting and selling methamphetamine."

---

**3**     The methamphetamine seized at the scene was subsequently tested by a criminalist. One sample was found to contain 2.788 grams of methamphetamine and the other contained 1.011 grams of methamphetamine.

Based on this determination, the items located—the methamphetamine, packaging, lockbox, pipe, and scales—were seized and transported back to the police department and booked into property and evidence. The seized magnetic lockbox, scales, and packaging material were introduced as evidence at trial. Fadley testified the lid used to cover one of the scales had a white residue in the corners that was consistent with some sort of narcotic. Fadley's body camera footage of the incident was introduced as an exhibit at trial and played for the jury.

Deputy Jose Garcia testified he had been with the Madera County Sheriff's Office for approximately two years and he was assigned to the Madera County Narcotics Enforcement Team. He previously worked for the Avenal Police Department as a fulltime police officer and field training officer and the Kings County Major Crimes Task Force investigating major crimes, which included gangs and narcotics. He had been a sworn police officer for about seven years. While with the Madera County Narcotics Enforcement Team, Garcia had worked on no less than 20 cases where the primary focus was methamphetamine sales. When investigating a case for the potential sale of controlled substances, Garcia testified he looked for the presence of the substance, packaging, which could be plastic baggies, scales, and "pay-owe sheets." He testified that, typically, the minimum dose an individual needs to feel the effects of methamphetamine is .02 grams. The prosecutor then posed a hypothetical to Garcia, mirroring the facts of this case and asked him to provide an opinion:

> "[PROSECUTOR:] Now, Deputy, let me pose you with a hypothetical scenario. Let's say we have an individual who's stopped for a regular traffic violation and during the stop officers discover in this hypothetical situation methamphetamine … on the individual in the vehicle. And he's the only occupant of the vehicle. A search of the car uncovers a large amount of money in small denominations, what has been discovered to be a methamphetamine pipe in the vehicle, three separate scales, … sandwich baggies …, a magnetic strong box or lock box found near the baggies, and an additional bundle of methamphetamine found inside the passenger's side headrest of the vehicle. And let's say, in this hypothetical situation, the

5.

methamphetamine found on the person was approximately 1 gram. It was 1.011 grams, and the methamphetamine found in the headrest was approximately 2.788 grams…. [L]et me further clarify or add to the scenario, that the individual admits there is methamphetamine in the headrest. If not for that, they would not have found the methamphetamine. Based on that scenario, are you able to form an opinion as to what this individual was possessing that methamphetamine for?

"[GARCIA:] Yes.

"[PROSECUTOR:] And can you give us that opinion for us?

"[GARCIA:] Yes. I believe that person is possessing that methamphetamine for sales based on having the denominations—the money, having the packaging, having the scales—three different scales, having one piece of methamphetamine on their person, and the second being hidden in the passenger headrest.

"Even though there's a pipe in the vehicle—from my experience and from speaking with drug users and drug sellers—there are some drug sellers that might not sell big quantities of methamphetamine, but they sell enough to supplement their own addiction and … keep their habits and being able to purchase methamphetamine so they can keep using."

Garcia also specifically opined that defendant was in possession of methamphetamine for sale and distribution in response to questioning by defense counsel. Specifically, the following exchange occurred:

"[DEFENSE COUNSEL:] So your opinion of the facts associated with this case, which we know you know, is that [defendant] was in possession of meth for sale; correct? That is the opinion that you formed, that this was a possession for sale and distribution case; correct?

"[GARCIA:] That's correct, yes."

**Verdict and Sentencing**

The jury convicted defendant as charged of unlawful possession for sale of a controlled substance (§ 11378, count 1), sale or transportation of a controlled substance (§ 11379, subd. (a), count 2), and possession of a smoking device (§ 11364, subd. (a), count 3). Following a court trial, the trial court also found true an allegation defendant

6.

had suffered a prior strike conviction and an aggravating factor allegation pursuant to California Rules of Court, rule 4.421(b)(3).

Defendant invited the trial court to dismiss his strike prior pursuant to section 1385. The prosecution filed an opposition to defendant's request. The court denied defendant's *Romero*[4] motion and defendant was sentenced to four years in prison (two years, the middle term, for count 1, doubled to four years based on the strike prior). The sentence on count 2 was stayed pursuant to section 654 and defendant was sentenced to two days in county jail with credit for two days on count 3.

## DISCUSSION

Defendant argues his counsel provided ineffective assistance in failing to object to the admission of Fadley's opinion testimony (described below) that defendant possessed and transported the methamphetamine for sale. We disagree.

### A. Relevant Factual Background

In response to questioning by the prosecution, Fadley opined he believed defendant was involved in narcotics transportation and distribution. The relevant testimony is as follows:

> "[PROSECUTOR:] Now, based on the evidence that was found in [defendant]'s car, the evidence that we see here on the screen, and your training and experience as a Madera [p]olice [o]fficer, did you come to a determination as to why [defendant] possessed the bundles of methamphetamine?
>
> "[DEFENSE COUNSEL]: Objection. Calls for a legal conclusion.
>
> "THE COURT: One moment. [¶] The way it's phrased, I'm sustaining that.
>
> "[PROSECUTOR]: Understood, Your Honor.
>
> "[PROSECUTOR:] [B]ased on the evidence that you found in [defendant's] vehicle, the evidence that we see in People's Exhibit N[o.] 1,

---

4       *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

and also based on your training and experience, did you form an opinion as to what these—what the exhibits could be used for?

"[FADLEY:] Yes.

"[PROSECUTOR:] And what was that opinion?

"[FADLEY:] I believed that [defendant] was involved in narcotics transportation and distribution.

"[PROSECUTOR:] And can you elaborate for us why?

"[FADLEY:] Given all these items of evidence, the larger amount of methamphetamine being packaged differently, I believe this was the main supply that he had had on from someone else to sell. I believe that packaging was his packaging, the [baggie], and that he had already divvied up this smaller amount. I believe that he had those scales for the purpose of weighing out these amounts for distribution, and I believe he had that black, magnetic box because he was, at some point, transporting this methamphetamine in the undercarriage of his vehicle."

Defense counsel objected "as non-responsive, speculation, and move[d] to strike. Narrative as well." The trial court overruled all the objections.

The trial court instructed the jury on expert testimony with CALCRIM No. 332:

"A witness was allowed to testify as an expert and to give an opinion. You must consider the opinion, but you are not required to accept it as true or correct.

"The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally.

"In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

"An expert witness may be asked a hypothetical question. A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts. It is up to you to decide whether an assumed fact has been proved. If you conclude that an assumed

8.

fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion."

The trial court also instructed the jury with regard to opinion testimony of a lay witness pursuant to CALCRIM No. 333:

"A witness who was not testifying as an expert gave his opinion during the trial. You may but are not required to accept that opinion as true or correct. You may give the opinion whatever weight you think appropriate.

"Consider the extent of the witness' opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

## B.    Standard of Review

A defendant claiming ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness" measured against "prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) In evaluating trial counsel's actions, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ...." (*Id*. at p. 689; accord, *People v. Dennis* (1998) 17 Cal.4th 468, 541.) Thus, a defendant must overcome the presumption the challenged action might be considered sound trial strategy under the circumstances. (*Strickland*, at p. 689; *Dennis*, at p. 541.) "Reasonableness must be assessed through the likely perspective of counsel at the time." (*People v. Ochoa* (1998) 19 Cal.4th 353, 445.)

Our Supreme Court has stated "[a]n attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffective assistance of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540, citing *People v. Frierson* (1991) 53 Cal.3d 730, 747, 749.) Moreover, the reasonable assumption that such objections would be

9.

overruled constitutes a rational tactical basis for failing to object. (*People v. Samayoa* (1997) 15 Cal.4th 795, 848.)

Additionally, to establish ineffective assistance of counsel, the defendant must also establish prejudice: "[T]hat there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid*.) On direct appeal, when no explanation for counsel's conduct can be found in the record, "we must reject the claim [of ineffective assistance of counsel] on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212; see *People v. Hernandez* (2004) 33 Cal.4th 1040, 1053.)

## C.      Applicable Law

Evidence Code section 720, subdivision (a) provides "[a] person is qualified to testify as an expert if he has special knowledge, skill, experience, [or] training" sufficient to qualify as an expert on the subject to which his testimony relates. "The general test for the admissibility of expert testimony is the question of whether the testimony concerns a subject 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.'" (*People v. Johnson* (1993) 19 Cal.App.4th 778, 786–787, quoting Evid. Code, § 801, subd. (a); see *People v. Vang* (2011) 52 Cal.4th 1038, 1044.) "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.)

Our Supreme Court has remarked that " '[w]hen expert opinion is offered, much must be left to the trial court's discretion.' " (*People v. Rodriguez* (2014) 58 Cal.4th 587, 639; see *People v. McDowell* (2012) 54 Cal.4th 395, 426 ["The trial court has broad

discretion in deciding whether to admit or exclude expert testimony"].) Expert opinion testimony " ' " 'will be excluded only when it would add *nothing at all* to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men [and women] of ordinary education could reach a conclusion as intelligently as the witness." ' " ' " (*People v. Edwards* (2013) 57 Cal.4th 658, 756.)

## D.      Analysis

Defendant contends his counsel provided ineffective assistance in failing to object to Fadley's testimony that defendant was involved in the transportation and sales of narcotics. He argues "[t]his opinion evidence was inadmissible because it impermissibly addressed a question of law, usurped the jury's function as the trier of fact, and directly addressed the issue of whether [defendant] was guilty of the transportation and sales of methamphetamine." He argues such testimony "coalesced the prosecution's case" and "counsel's failure to act resulted in denial of [defendant's] federal and state constitutional rights to effective assistance of counsel, a fair trial, and due process of law." Defendant acknowledges that an expert may offer testimony bearing on the " 'ultimate issue' " to be decided by the jury pursuant to Evidence Code section 805, but asserts the expert must not usurp the function of the jury or express an opinion as to a defendant's guilt or innocence. He contends his counsel's failure to object to Fadley's testimony on these grounds constituted ineffective assistance. He asserts he was prejudiced as a result of the admission of such testimony, arguing Fadley served a dual role as the investigating officer and an expert which "unfairly bolster[ed] his credibility in the eyes of the jury and add[ed] undue weight to his opinions." He also asserts the character of such testimony necessarily rendered it prejudicial, noting "the challenged testimony was dispositive on the issue of guilt." He argues counts 1 and 2 should be reversed in light of his counsel's failure to object to this testimony. The People respond, "[Our] Supreme Court long ago recognized that in cases in which a defendant is charged with possessing a controlled

11.

substance for sale, 'experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as quantity, packaging and normal use of an individual,' " citing *People v. Newman* (1971) 5 Cal.3d 48, 53 (*Newman*), disapproved of on another ground in *People v. Daniels* (1975) 14 Cal.3d 857, 862. They assert Fadley's testimony was proper and, thus, "there was no impropriety to object to," and counsel was not deficient in this regard. Alternatively, they contend, even assuming error, defendant was not prejudiced. They contend there was "abundant" evidence defendant possessed the methamphetamine for sale; the jury was instructed it was not required to accept any witness's testimony; the prosecutor did not represent Fadley's conclusions were dispositive; and Fadley only testified to his belief based on the totality of the evidence and he did not testify defendant "was guilty of the crimes charged." For the reasons that follow, we reject defendant's claim of ineffective assistance of counsel.

As the People note, our Supreme Court has held "it is settled that an officer with experience in the narcotics field may give his opinion that the narcotics are held for purposes of sale based upon matters such as quantity, packaging, and the normal use of an individual." (*People v. Hunt* (1971) 4 Cal.3d 231, 237; accord, *Newman*, *supra*, 5 Cal.3d at p. 53; see *People v. Dowl* (2013) 57 Cal.4th 1079, 1084 [discussing the rule in *Hunt*].) "Thereafter, it is for the jury to credit such opinion or reject it." (*People v. Harris* (2000) 83 Cal.App.4th 371, 375.) Accordingly, there is a consistent line of case law confirming that whether drugs are possessed for the purpose of sale is a matter beyond the experience of the average juror and is an appropriate subject for expert testimony from law enforcement. (See, e.g., *People v. Carter* (1997) 55 Cal.App.4th 1376, 1378 [holding trial court properly admitted expert opinion testimony that defendant possessed narcotics for sale]; accord, *People v. Parra* (1999) 70 Cal.App.4th 222, 227 [testimony of two experienced narcotics interdiction officers that defendant possessed cocaine with intent to sell based upon quantity of drugs seized and lack of drug paraphernalia in car supported defendants' convictions]; see *People v. Doss* (1992) 4

Cal.App.4th 1585, 1594, 1596 [holding trial court did not err in permitting expert opinion testimony from Bureau of Narcotic Enforcement officer concerning whether defendant possessed certain prescription drugs for sale].) This is because the "habits of those who possess [narcotics] for their own use and those who possess [narcotics] for sale," are not necessarily known to laypersons. (*Hunt*, at p. 237.)

Given this landscape, we cannot conclude defense counsel provided ineffective assistance in failing to object to the challenged testimony. Rather, counsel could have reasonably determined an objection to the challenged testimony would have been futile. (See *People v. Ochoa*, *supra*, 19 Cal.4th at p. 463 [trial counsel's representation is not deficient "for failing to make meritless objections"]; *People v. Price* (1991) 1 Cal.4th 324, 387 ["counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"].) Thus, "[t]he record fails to demonstrate affirmatively that counsel's omissions were not based upon a rational tactical basis, such as the reasonable assumption that such objections would be overruled." (*People v. Samayoa*, *supra*, 15 Cal.4th at p. 848.)

Irrespective, we cannot conclude defendant has demonstrated a reasonable probability that he would have obtained a more favorable verdict if his counsel had objected to Fadley's challenged testimony. (See *People v. Watson* (1956) 46 Cal.2d 818, 836, 837.) Initially, even if defense counsel had lodged an objection to such testimony, we cannot conclude that the objection would necessarily have been sustained given our Supreme Court cases expressly condoning the use of such opinion testimony in narcotics cases. Indeed, the Supreme Court recently reiterated this proposition in concluding the evidence an officer personally discovered and the evidence introduced at trial by another detective who personally discovered it supported the officer's conclusion that the defendant possessed drugs for sale. (See *People v. Camacho* (2022) 14 Cal.5th 77, 131, 132 [citing *Newman*, *supra*, 5 Cal.3d at p. 53 in support].)

13.

Furthermore, there was other tangible, compelling evidence offered in this case—aside from the challenged portion of Fadley's testimony—supporting the verdict and to which defendant posed no objection. Here, the undisputed evidence introduced at trial reflects that defendant was found in possession of more than 3.5 grams of methamphetamine—some of which was hidden in the passenger seat headrest of his car—packaging material (namely, plastic baggies), multiple scales, cash in lower denominations, and a magnetic lockbox that Fadley and Garcia testified they associated with being used to hide contraband. Garcia also opined, based on a hypothetical mirroring the facts associated with this case, that given the circumstances presented, the drugs were possessed for the purposes of sale. Notably, Garcia also specifically testified, in response to questioning by defense counsel, that it was his opinion that defendant was in possession of methamphetamine for sale and distribution. Additionally, Fadley also testified generally that he suspected defendant possessed the methamphetamine for the purpose of sale to explain why he did a thorough search to see if there was anything else hidden in the vehicle. Defendant does not assert his counsel was ineffective in failing to object to any of this testimony, which also supports the jury's verdict and renders any alleged error in admitting the challenged testimony harmless.

Beyond that, the trial court's instructions to the jury mitigated any risk of prejudice. The court instructed the jury it was "not required to accept [expert witness testimony] as true or correct." The court also explained to the jurors they could "disregard" any opinion they found to be "unbelievable, unreasonable, or unsupported by the evidence." Thus, irrespective of the propriety of Fadley's testimony, the jury was informed it was not bound by it and was free to ignore it if it concluded it was not supported by the evidence.

For the same reasons, we cannot conclude defense counsel's failure to object to the challenged testimony rendered the trial fundamentally unfair in violation of defendant's federal due process rights. Our Supreme Court has stated "the admission of evidence,

14.

even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test .…" (*Ibid*.; see generally *People v. Fudge* (1994) 7 Cal.4th 1075, 1103–1104 [evaluating trial court's ruling on hearsay objection under *Watson*]; *People v. McDaniel* (2019) 38 Cal.App.5th 986, 1005–1006 [evaluating the erroneous admission of text messages under *Watson*]; see also *People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, 756 [evaluating the trial court's exclusion of expert testimony under *Watson*].) Only on "rare and unusual occasions" can admission of evidence result in an error of such magnitude so as to raise federal due process concerns and trigger *Chapman*[5] review. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 232 and fn. 18.)

We see no deprivation of defendant's due process rights on this record. Contrary to defendant's contention, as discussed *ante*, we disagree it was reasonably probable he would have obtained a more favorable result if his counsel had objected to Fadley's challenged opinion testimony. And defendant points to nothing else in the record to suggest the failure to object in this instance was an error of such magnitude so as to render the trial fundamentally unfair. We therefore reject defendant's constitutional argument.

### DISPOSITION

The judgment is affirmed.

---

[5] *Chapman v. California* (1967) 386 U.S. 18.